775 A.2d 740 (2001)
342 N.J. Super. 106
STATE of New Jersey, Plaintiff-Respondent,
v.
James PAYTON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 24, 2001.
Decided July 9, 2001.
Peter A. Garcia, Acting Public Defender, for appellant (Diane Toscano, Designated
*741 Counsel, Newark, of counsel and on the briefs).
Defendant filed a supplemental pro se letter brief.
John J. Farmer, Jr., Attorney General, attorney for respondent (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and COLLESTER.
The opinion of the court was delivered by A. A. RODRÍGUEZ, J.A.D.
In this appeal, arising from a warrantless search of a motor vehicle by a New Jersey State Trooper, we hold that, although defendant has pleaded guilty to the charge, a racial profiling defense can be raised for the first time on appeal because defendant challenged the validity of his consent to search the vehicle by way of a pre-trial motion to suppress.
Defendant, James Payton, moved to suppress evidence of 187.9 grams of cocaine seized during a traffic stop. After the motion was denied by Judge Martin A. Herman, defendant pled guilty, pursuant to an agreement with the State, to first degree possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:35-5a(1) and -5b(1). In exchange, the State agreed to dismiss related charges and to recommend the following sentence: a custodial term between fifteen to twenty-five years with a sixty-five to seventy-one month period of parole ineligibility. Judge Joseph F. Lisa, granted the State's motion for an extended term and imposed a twenty-five year term with a sixty-eight month period of parole ineligibility.

I
Defendant's motion to suppress did not raise an issue of racial profiling or selective enforcement. Rather, the motion challenged the validity of his alleged consent to a search of the motor vehicle he was operating. Only one witness, New Jersey State Police Corporal Peter K. Bethune, testified at the hearing on the motion to suppress. His testimony can be summarized as follows. On June 18, 1996, Bethune was patrolling the New Jersey Turnpike in East Greenwich and Woolwich Townships. At approximately 1:05 a.m., Bethune observed a red, four-door 1996 Ford Taurus GL, with a New Jersey license plate, traveling southbound at seventy-six m.p.h. in a fifty-five m.p.h. zone. The Taurus was also swerving. Bethune activated the patrol car's overhead lights and siren. The Taurus traveled for approximately one hundred feet before stopping. Because the Taurus took some time to pull over, and Bethune was alone, he contacted another patrol unit for assistance.
Bethune approached defendant, the driver of the Taurus. Co-defendant, Darren O. Roe, was the passenger. Defendant gave his driver's license to Bethune and told him that the Taurus was rented. He tried unsuccessfully to find the rental agreement and explained that he had left it at home. According to Bethune, defendant "had a very nervous demeanor." Defendant's hands shook when he handed the officer his driver's license. For this reason, Bethune asked defendant to exit the Taurus. Defendant complied.
Bethune asked defendant, out of Roe's earshot, his destination. Defendant responded that he was going to Delaware to meet a girl named Theresa. He had met her in New York the previous week. He planned to call her when he reached the first rest area in Maryland. Defendant *742 also admitted that he had been speeding. Because defendant stated that the girl he planned to visit lived in Delaware, but would be bypassing Delaware to call her from Maryland, Bethune asked him if he had her phone number. Defendant did not. Bethune asked defendant to identify his passenger. Defendant replied that it was his cousin Darren, but he did not know his last name.
Around this time, Troopers Philippi and Og arrived at the scene. Bethune asked Roe to exit the Taurus. The passenger complied. He identified himself as Nafis Roe and said that he had no idea where his cousin was going. He stated that he was just going along for the ride.
Based on defendant's and Roe's nervous demeanor and their conflicting statements, Bethune asked defendant if he would sign a consent form to a search. Defendant read the consent form. Bethune also read the form aloud to defendant, and explained what it meant. According to Bethune, defendant said that he understood his rights and signed the form.
After the form was signed, Trooper Philippi asked defendant, who owned the telephone attached to the Taurus' lighter plug. Defendant replied that the phone did not belong to him, but to a friend. He did not have the name of that friend or where he lived. Trooper Philippi, who had been trained in the identification of cloned telephones, checked the serial number. He determined that the telephone in the Taurus was a cloned telephone. At this point, defendant was placed under arrest for possession of a cloned telephone. Trooper Og then found, in the back seat, a package wrapped in clear plastic containing 187.9 grams of crack cocaine. At this point, Roe was also arrested. Defendant was issued two traffic summonses (speeding, N.J.S.A. 39:4-98, and possession of controlled dangerous substance in a motor vehicle, N.J.S.A. 39:4-49.1).

II
Defendant now appeals to us, pursuant to R. 3:5-7(d).[1] He contends:
I. THE TROOPER'S QUESTIONING OF THE DRIVER AND PASSENGER EXCEEDED THE SCOPE PERMISSIBLE DURING THE COURSE OF AN INVESTIGATION OF A MOTOR VEHICLE VIOLATION.
II. BECAUSE THE REASONS ARTICULATED BY THE STATE TROOPER TO JUSTIFY HIS DECISION TO REQUEST CONSENT FOR A SEARCH OF THE CAR WERE SPECIOUS, IT IS JUST AS LIKELY THAT DEFENDANT WAS SINGLED OUT FOR A CONSENT SEARCH BECAUSE HE IS AFRICAN-AMERICAN. THIS CONSTITUTES A VIOLATION OF STATE POLICE RULES AND PROCEDURES AND VIOLATED DEFENDANT'S STATE AND FEDERAL RIGHTS AGAINST UNREASONABLE SEARCHES AND SEIZURES, HIS RIGHT TO DUE PROCESS, AND HIS RIGHT TO EQUAL PROTECTION OF THE LAW. (U.S. CONST., AMENDS. IV AND XIV; N.J. CONST. (1947), ART. I, PAR. 1, 7.) (Not Raised Below).
A) The Judge's Denial of the Motion to Suppress Was Wrong; the Court Made Factual Mistakes Based on the *743 Trooper's Testimony, and Exaggerated the Actual Testimony of the Trooper to Support His Findings.
B) Defendant's Rights To Due Process And Equal Protection Were Infringed.
In a supplemental pro se brief, defendant contends:
FAILURE TO RAISE THE ISSUE OF SELECTIVE ENFORCEMENT SHOULD BE CONSIDERED UNDER THE STANDARD OF PLAIN ERROR.
[1] These contentions challenge the denial of the motion to suppress. The defense of racial profiling or selective enforcement is raised for the first time on appeal. This case is factually similar to the case of State v. Glenford Francis, 341 N.J.Super. 67, 775 A.2d 79 (App.Div. 2001). In both cases, the arrest, the hearing on the motion to suppress, and the conviction, all occurred before the release of the Interim Report.[2] However, the conviction in Francis was the result of a jury verdict. Here, defendant pled guilty. In State v. Velez, 335 N.J.Super. 552, 560, 763 A.2d 290 (App.Div.2000), we held that "a guilty plea does not constitute a waiver of a `profiling' claim if it was raised or is related to a claim asserted at the motion to suppress."
As in State v. Ross, 335 N.J.Super. 536, 763 A.2d 281 (App.Div.2000), certif. denied, 167 N.J. 637, 772 A.2d 939 (2001), this arrest was made by the New Jersey State Police. Cf. State v. Jerish Halsey, 340 N.J.Super. 492, 493, 774 A.2d 693 (App. Div.2001) (holding that a motorist stopped by a police agency other than the State Police, cannot rely on the contents of the Interim Report to show entitlement to discovery in order to explore the existence of a racial profiling or selective enforcement defense). However, unlike Ross, racial profiling was not raised as an issue prior to this appeal.
Nevertheless, because the arrest, motion to suppress and guilty plea of defendant all occurred prior to the issuance of the Interim Report, we hold that a challenge to the consent to search preserves racial profiling or selective enforcement defenses. In State v. Carty, 332 N.J.Super. 200, 206, 753 A.2d 149 (App. Div.2000), certif. granted, 165 N.J. 605, 762 A.2d 219 (2000), we noted that the Interim Report makes reference to the State Police Standard Operating Procedures, which require that consent searches be "predicated upon a reasonable, articulable suspicion that the search would reveal evidence of a crime...." We also noted that the Interim Report reaffirms "the existing policy that a State Police member may request permission to conduct a search only when facts are present that constitute a reasonable, articulable suspicion to believe that the search will uncover evidence of a crime." Ibid. We further noted that the United States of America v. State of New Jersey and Division of State Police of the New Jersey Department of Law and Public Safety (Consent Decree), provides in part that:
In order to help ensure that state troopers use their authority to conduct consensual motor vehicle searches in a nondiscriminatory manner, the State Police shall continue to require: that state troopers may request consent to search a motor vehicle only where troopers can articulate a reasonable suspicion that a search would reveal evidence of a crime....

[Ibid.] *744 The contents of the Interim Report and the Consent Decree, which are judicially noticeable, were not available to Judge Herman when the motion to suppress was decided. We recognize that deviations from State Police internal regulations are not necessarily violations of federal or state constitutional rights. See State v. Hampton, 333 N.J.Super. 19, 28-29 n. 5, 754 A.2d 567 (App.Div.2000). We need not explore that issue here because it is clear to us that consent to search issues are impacted by the Interim Report and Consent Decree, and are sufficiently related to the defense of racial profiling or selective enforcement to warrant their consideration on direct appeal.
Here, we are satisfied that defendant has met the threshold for entitlement to discovery to explore a selective enforcement defense. See State v. Kennedy, 247 N.J.Super. 21, 25, 588 A.2d 834 (App.Div. 1991) (holding that defendant must establish colorable basis for claim of selective enforcement in order to obtain pretrial discovery); State v. Ballard, 331 N.J.Super. 529, 538, 752 A.2d 735 (App.Div.2000) (holding that discovery is relevant to whether defendant can successfully move for relief based on selective enforcement). Accordingly, we withhold appellate review of the first two contentions which concern the denial of the motion to suppress. Instead, we remand so that the motion may be reconsidered by the Law Division, Gloucester County, after the scope of racial profiling discovery is determined by the specially-designated judge, the Honorable Walter R. Barisonek. Ross, supra, 335 N.J.Super. at 538, 763 A.2d 281.
[Section III, concerning a separate and discrete issue, is redacted from publication.]
The sentence is affirmed. The order denying the motion to suppress is remanded for reconsideration after a ruling on the scope of racial profiling discovery.
NOTES
[1] This appeal has been assigned to this Part pursuant to its designation to consider and resolve questions pertaining to racial profiling or selective enforcement. See State v. Ballard, 331 N.J.Super. 529, 534, 752 A.2d 735 (App.Div.2000).
[2] Interim Report of the State Police Review Team Regarding Allegations of Racial Profiling, released and published on April 20, 1999 by the Attorney General.