887 A.2d 174 (2005)
381 N.J. Super. 545
STATE of New Jersey, Plaintiff-Respondent,
v.
Kermit BALL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 2005.
Decided December 9, 2005.
*177 Yvonne Smith Segars, Public Defender, attorney for appellant (Philip Lago, Designated Counsel, on the brief).
Theodore J. Romankow, Prosecutor of Union County, attorney for respondent (Steven J. Kaflowitz, Assistant Prosecutor, of counsel; Mr. Kaflowitz and Patricia L. Cronin, Legal Analyst, on the brief).
Before Judges STERN, FALL and PARKER.
The opinion of the court was delivered by
PARKER, J.A.D.
In this appeal from denial of defendant's petition for post-conviction relief (PCR), among other issues, we are presented with the question of whether a defendant's illegal conduct after a stop allegedly based on racial profiling attenuates[1] the taint of the allegedly illegal stop thereby precluding defendant from obtaining racial profiling discovery. We hold that a defendant is entitled to racial profiling discovery upon establishing a colorable claim and that only after the discovery has been made available to defendant is it appropriate to decide whether there was an illegal stop which was attenuated by defendant's post-stop conduct.[2]
Defendant Kermit Ball, an African-American man, appeals from an order entered on December 12, 2003, denying his petition for post-conviction relief (PCR). In his petition, he alleged ineffective assistance of trial counsel and racial profiling.
Defendant was tried and convicted of first degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and 35-5b(1), and third degree hindering prosecution, N.J.S.A. 2C:29-3. He was sentenced to an aggregate term of twenty-four years subject to eight years parole ineligibility and the mandatory penalties. Defendant's conviction and sentence were affirmed in an unpublished opinion on direct appeal and his petition for certification was denied on April 27, 2001 by the Supreme Court. State v. Ball, No. A-1096-98 (App.Div. Feb. 13, 2001), certif. denied, 168 N.J. 291, 773 A.2d 1155 (2001).
On May 20, 2002, defendant filed a PCR petition pro se. In March 2003, after counsel assumed representation, defendant moved for discovery on the issue of racial profiling. That motion was denied in an order entered on April 11, 2003. On December 12, 2003, the PCR petition was denied in its entirety.
Defendant's arrest arose out of a stop on the New Jersey Turnpike (Turnpike) on June 19, 1994. At 12:04 p.m., New Jersey State Police Trooper Eric Estok was traveling south on the outer roadway in an unmarked car. The trooper observed a black Toyota and a white Buick traveling south on the inner roadway. Both cars had out-of-state license plates and were speeding, making frequent lane changes and tailgating other cars on the highway. The Toyota was occupied by a white man and woman, and the Buick was occupied *178 by three African-American men, one of whom was defendant, and was driven by a Hispanic man. Estok did not have radar, so he paced the vehicles, estimating their speeds between seventy-five and eighty miles per hour. Estok crossed over to the inner roadway, activated his lights and siren and pulled both cars to the shoulder of the road at mile post 102.9 between exits thirteen and fourteen.
The trooper first approached the passenger side of the Toyota and asked the driver for identification. After he obtained the necessary information, he walked to the passenger side of the Buick and asked the driver, co-defendant William Pabon, for his identification. Estok noticed the smell of marijuana in the vehicle and, after taking Pabon's identification, walked to the rear of the Buick to radio for backup. As he was talking on the radio, Estok heard the Buick being placed into drive and shouted to Pabon to turn the car off. As Estok returned to the passenger side of the vehicle to take Pabon's keys, co-defendant Donell Cradle, who was sitting in the front passenger seat, reached under the seat, retrieved a brown paper bag and tossed it to defendant who was sitting in the left rear seat. Defendant took the bag, bolted from the vehicle and ran across the inner southbound lanes onto the inner northbound lanes, bringing traffic to a screeching halt. He fell in the inner northbound lane, dropped the bag, picked it up and continued running across the inner road, jumped the guardrail, crossed the outer northbound lanes and ran into a marshy swamp area along the shoulder of the Turnpike.
At that point, the first backup trooper arrived at the scene, chased defendant to the swamp and saw him throw the brown paper bag toward a fence. Two other troopers who had arrived on the scene went into the swamp and recovered the bag tossed by defendant. The paper bag contained a clear plastic bag filled with a white powdery substance, which was later tested and found to be 484.2 grams, approximately 17.08 ounces, of 74.1 percent pure cocaine, valued between $600 and $900 an ounce. Defendant was arrested, charged with possession of cocaine with intent to distribute and hindering prosecution. All four occupants of the Buick were tried as co-defendants. The driver, Pabon, and the right rear seat passenger, David McDuffy, were acquitted. Only defendant and Cradle were convicted.
In his PCR petition, defendant argued ineffective assistance of trial counsel, alleging that trial counsel (1) failed to explain the plea offer in detail; (2) failed to advise defendant that a suppression motion had not been made; and (3) inadequately advised defendant of his right to testify at trial.
In this appeal, defendant argues:
POINT ONE
THE LOWER COURT ERRED IN DENYING THE PETITION SINCE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
(1) Trial Counsel failed to Explain the Plea Offer in Detail
(2) Trial Counsel failed to file a Suppression Motion
(3) Trial Counsel Misadvised Defendant regarding the Suppression Motion
(4) Trial Counsel failed to adequately advise Defendant regarding his Right to Testify
(5) Trial Counsel's Cumulative Errors amount to Inefective [sic] Assistance
POINT II
THE LOWER COURT ERED IN DENYING DEFENDANT'S PETITION WITHOUT CONDUCTING AN EVIDENTIARY HEARING

*179 POINT III

THE COURT SHOULD GRANT RELIEF IN THE INTEREST OF JUSTICE AND FUNDAMENTAL FAIRNESS
POINT IV
THE LOWER COURT ORDER DENYING DEFENDANT'S MOTION FOR RACIAL PROFILING DISCOVERY MUST BE REVERSED

I.
In his first point, defendant contends that trial counsel rendered ineffective assistance, denying his Sixth Amendment right to counsel.[3] In order to establish ineffective assistance of counsel, defendant must meet the two-prong test articulated in Strickland v. Washington, 466 U.S. 668, 687-98, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693-700 (1984), and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 53-58, 519 A.2d 336 (1987). The Strickland test requires defendant to show that (1) trial counsel's representation was constitutionally ineffective; and (2) "counsel's deficient performance deprived the defendant of `a fair trial,' that is, `a trial whose result is reliable.'" State v. Allah, 170 N.J. 269, 283-84, 787 A.2d 887 (2002) (quoting Strickland, supra, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693). Alternatively, to demonstrate the second prong, defendant may prove that but for counsel's ineffective assistance, the outcome of the trial would have been different. Strickland, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. "A claim for post-conviction relief must be established by a preponderance of the credible evidence." State v. McQuaid, 147 N.J. 464, 483, 688 A.2d 584 (1997) (citing State v. Preciose, 129 N.J. 451, 459, 609 A.2d 1280 (1992)).
Defendant first argues that trial counsel[4] was ineffective because counsel failed to adequately explain the plea offer and sentencing code to him. At sentencing, trial counsel acknowledged he never advised defendant that he would be subject to an extended term if arrested while released on bail pending these charges. Defendant claimed that he would have accepted the plea offer if he had been properly advised.
Defendant's arrest on the Turnpike was his first adult arrest. When released on bail, however, he returned to his home in North Carolina where he was arrested and convicted of a felony level offense on October 5, 1995. He was arrested again after the verdict in this case because he fled New Jersey before sentencing.
Defendant claims that his attorney's failure to explain the New Jersey sentencing law with respect to succeeding offenses prevented him from making a fair evaluation of the plea offer. We reject this argument for two reasons. First, as Judge Barisonek noted, defendant's counsel advised "defendant about his sentence exposure based on facts and circumstances known to that counsel at the time." Defense counsel could not have reasonably anticipated that a first-time arrestee, who protested his innocence, would commit two more crimes before he was sentenced on the pending charges. Second, at the time of sentencing, defendant maintained his innocence. Again, as Judge Barisonek noted, defendant could not have pled guilty to a crime he continued to claim he did not commit.
*180 Defendant next argues that counsel was ineffective in failing to file a suppression motion on his behalf. There is no dispute that defendant's trial counsel did not file a suppression motion. A suppression motion was, however, filed on behalf of a co-defendant. Defendant's counsel was present for the hearing, after which the motion was denied.
When a defendant's ineffective assistance of counsel claim is based on a failure to file a suppression motion, defendant must establish that the suppression motion has merit. State v. Fisher, 156 N.J. 494, 501, 721 A.2d 291 (1998). Here, defendant has proffered no evidence that a suppression motion filed on his behalf would have succeeded. Given that defendant was observed carrying the brown bag across the Turnpike by a number of witnesses, he cannot reasonably argue that a motion to suppress filed on his behalf would have been granted.[5]
Defendant argues further that trial counsel failed to advise him adequately of his right to testify. He now claims that he wanted to testify but was advised against it for strategic reasons. Irrespective of counsel's advice, the trial judge clearly instructed defendants regarding their right to testify:
You have good attorneys, experienced attorneys and you should pay very careful attention to their advice. But remember, gentlemen, that the final decision is not the attorneys[']. Their advice is something you must take very seriously especially in view of their experience and knowledge but the bottom line is it's your decision. If you don't get convicted, it's to your benefit. If you do get convicted, it's not to your benefit and you would go in one direction and the attorneys[,] although they feel sorry for you[,] would simply go onto their next case. So it's your risk one way or the other.
If you choose to testify, I understand that Mr. Pabon and Mr. Ball have no prior record and they could not be impeached on the basis of any prior record.
The trial judge then explained the jury charge he could have given if the defendants chose not to testify:
It's the constitutional right of a defendant to remain silent. I charge you that you're not to consider for any purpose or in any manner in arriving at your verdict the fact that the defendant did not testify nor should that fact enter into your discussions at any time or in any manner. The defendant is entitled to have the jury consider all of the evidence and he is entitled to the presumption of innocence, even if he does not testify as a witness.
The judge told the defendants:
I would like you to take a couple of moments ... take ... the time you feel is necessary for you to be comfortable with your decision. Talk about this one more time with your lawyers. I know you have talked about it. If you do not testify, [and] you want to remain silent, I have a form for you to fill out and your attorneys can help you fill out the form. If you do wish to testify, your attorneys can advise me of that, also.
Defendant's counsel then indicated that defendant would testify but requested an adjournment because it was after four o'clock in the afternoon and counsel did not want to give the State an entire evening *181 to prepare for cross-examination. The trial judge granted the request on April 24, 1996, but defendant never raised the issue of testifying again. Testimony concluded on May 2, 1996.
After the last witness testified, each of the defendants indicated through counsel that he was resting. The trial judge then advised the defendants again that they had a right to testify and indicated that if they chose not to testify, he could charge the jury as to their constitutional right to remain silent. After he repeated that jury instruction, counsel for each of the defendants responded that he did not want the instruction included in the jury charge. Defendant, therefore, was fully advised of his right to testify and the opportunity to have the jury charged if he chose not to do so.
The right of a criminal defendant to testify on his or her own behalf "is essential to our state-based concept of due process of law, which guarantees a `fair and impartial trial in which there is a legitimate and decorous recognition of the substantive rights of the defendant.'" State v. Savage, 120 N.J. 594, 628, 577 A.2d 455 (1990) (quoting State v. Morriggi, 15 N.J.Super. 479, 481, 83 A.2d 612 (App.Div.1951)). "[A] criminal defendant is entitled to testify on his or her own behalf under Article I, paragraphs 1 and 10 of our State Constitution." Ibid. As with any other constitutionally-based right, a defendant must knowingly waive the right. We have previously held, however, that when a defendant is represented by counsel, the court need not engage in a voir dire on the record to establish defendant's waiver. State v. Bogus, 223 N.J.Super. 409, 424, 538 A.2d 1278 (App.Div.), certif. denied, 111 N.J. 567, 546 A.2d 497 (1988). Nevertheless, we advised that "the better practice [is] for a trial court to inquire of counsel whether he or she has advised a defendant... of his or her right to testify." Savage, supra, 120 N.J. at 631, 577 A.2d 455. Or, alternatively, to advise defendant directly.
In deciding the PCR petition, the judge considered defendant's certification, dated November 7, 2003, submitted in support of his petition. Defendant acknowledged that Cradle threw the brown paper bag to him, that he ran from the car, dropped the bag when he fell, picked up the bag, continued to run across the highway and threw the bag into the swamp. In his certification, defendant stated that his testimony would have been as follows:
I had just woke [sic] up from sleeping, and I remember the officer asking whose [sic] been smoking marijuana? He left[,] said something to the couple in the car in front of us. When he returned[,] he came to the passenger side of the car and told Mr. Pabon to put the car in park and cut the ignition and give him the keys. Mr. Pabon complied. Then a commotion broke out in the front seat and the officer punched Cradle and Mr. Cradle threw a brown paper bag directly in the backseat that landed in my lap, and he said go. I was only 19 at the time and scared. I just exited the car and ran, when I stepped out of the car I fell. I then picked up the bag continued to run until I crossed the highway. Once off the highway I just through [sic] the bag, actually not knowing what was in the bag. I never saw the contents of the bag. I know if the Judge and Jury would have had a chance to hear my story it would have had a major impact on the suppression hearing as well as at trial. This is what I would have testified to if I was given an opportunity. This is the whole truth.
In considering the certification, the judge found that even if counsel had not adequately advised defendant of his right *182 to testify, defendant's proffered testimony would not have changed the outcome of the trial.
While we do not disagree with the judge's assessment of the proffered testimony, we hold that regardless of whether defendant was advised by counsel, the trial judge fully explained defendant's right to testify, the possible consequences of his choice and the option to have the jury instructed to draw no inference from defendant's choice not to testify. Moreover, the trial judge specifically advised defendant that since he had no prior convictions, he could not be impeached on the basis of a prior record if he chose to testify.
We have carefully considered the trial record and we are satisfied that defendant has not met the two-prong Strickland test.

II.
In his second point, defendant contends that the trial court erred in denying his PCR petition without conducting an evidentiary hearing. The trial court may grant an evidentiary hearing on a PCR petition if the defendant has established a prima facie case of ineffective assistance of counsel. State v. Marshall, 148 N.J. 89, 157, 690 A.2d 1 (citing Preciose, supra, 129 N.J. at 462, 609 A.2d 1280), cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997). In order to establish a prima facie case, defendant must demonstrate a reasonable likelihood that he will ultimately succeed on the merits. Marshall, supra, 148 N.J. at 157, 690 A.2d 1. "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, or that the defendant's allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing, then an evidentiary hearing need not be granted." Id. at 158, 690 A.2d 1 (citations omitted). In other words, defendant "must do more than make bald assertions that he was denied effective assistance of counsel[;] [h]e must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J.Super. 154, 170, 728 A.2d 307 (App.Div.), certif. denied, 162 N.J. 199, 743 A.2d 852 (1999). Only then can a judge determine whether a prima facie case has been made.
We are satisfied that defendant failed to establish a prima facie case for ineffective assistance and that the PCR judge properly denied the petition without an evidentiary hearing. Strickland, supra, 466 U.S. at 687-98, 104 S.Ct. at 2064, 80 L.Ed.2d at 693-700; Marshall, supra, 148 N.J. at 157, 690 A.2d 1.

III.
We come now to defendant's arguments that discovery should have been granted on his racial profiling claim, that his conviction should be vacated and the charges against him dismissed in the interest of justice and fundamental fairness because the police engaged in the illegal practice of racial profiling. We confine our ruling solely to the discovery issue.
Defendant contends that the discovery he sought was relevant to the credibility of the troopers involved in his arrest. Alternatively, he maintains that he was entitled to "discovery relating to the decisions made by the State, on one hand, to move for dismissal on dozens of cases, and, on the other hand, to move for exclusion from racial profiling discovery proceedings some cases [including his] in which it was deemed... that an intervening criminal act on the part of the defendant had `broken the chain.'"
Racial profiling is, in essence, a claim of selective prosecution. State v. *183 Ballard, 331 N.J.Super. 529, 539, 752 A.2d 735 (App.Div.2000). "To prevail on a claim of selective prosecution, the defendant must provide `clear evidence' to overcome the presumption that the prosecutor has not acted unconstitutionally, given the general deference to which prosecutorial decisions are entitled." Id. (citing United States v. Armstrong, 517 U.S. 456, 465, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687, 698-99 (1996)). Arguments based on selective prosecution are grounded in equal protection. Armstrong, supra, 517 U.S. at 465, 116 S.Ct. at 1487, 134 L.Ed.2d at 699.
We have previously found that "in order to prevail on a selective prosecution claim, a defendant must prove that the `prosecutorial policy had a discriminatory effect and it was motivated by a discriminatory purpose,' and that `similarly situated individuals of a different race' were treated differently." Ballard, supra, 331 N.J.Super. at 540, 752 A.2d 735 (quoting Armstrong, supra, 517 U.S. at 465, 116 S.Ct. at 1487, 134 L.Ed.2d at 699). Discovery is pertinent to a racial profiling claim to the extent that the state police stop and arrest records may enable a defendant to establish a prima facie case of selective prosecution based upon racial profiling. Ballard, supra, 331 N.J.Super. at 538, 752 A.2d 735.
In State v. Clark, we held that a
defendant is entitled to discovery in support of his claim of "racial profiling" based on the aggregate circumstances revealed by this record, including: (1) he filed a timely petition, see R. 3:22-12; (2) he filed a timely pretrial motion to suppress the evidence obtained following the stop on the New Jersey Turnpike by a state trooper; (3) the motion to suppress challenged the "consent search"; (4) the stop and "consent" search occurred ... after the time State v. Soto [324 N.J.Super. 66, 734 A.2d 350 (Law Div.1996)] found that "profiling" by state troopers was occurring on the Turnpike, see 324 N.J.Super. at 84-85, 734 A.2d 350, but before the Attorney General and State Police endeavored to remedy the problem, see Ballard, supra, 331 N.J.Super. at 542-43, 752 A.2d 735; and (5) defendant challenged the stop and search on his unsuccessful direct appeal. In these circumstances, defendant is entitled to apply to the Designated Judge for discovery to support the claim that he was, in fact, a victim of racial profiling.
[345 N.J.Super. 349, 358, 785 A.2d 59 (App.Div.2001)].
This case goes beyond Clark because no pretrial suppression motion was filed on defendant's behalf, the stop did not involve a "consent" search, and the stop occurred on June 19, 1994, well before the publication of Soto. See, e.g., State v. Payton, 342 N.J.Super. 106, 111, 775 A.2d 740 (App.Div.2001); State v. Ross, 335 N.J.Super. 536, 541, 763 A.2d 281 (App.Div.2000); Ballard, supra, 331 N.J.Super. at 559-60, 752 A.2d 735. We note that State v. Kennedy, 247 N.J.Super. 21, 25, 588 A.2d 834 (App.Div.1991), was decided prior to Soto. In Kennedy, we held that a defendant who made a colorable claim of selective enforcement based upon racial profiling was entitled to discovery of State Police records allegedly supportive of a claim of discriminatory enforcement of traffic laws. Id. at 25, 588 A.2d 834.
Defendant argues that he has established a prima facie case of racial profiling by virtue of the fact that the vehicle in which he was stopped was occupied by three African-American men and a Hispanic man. For the purposes of the discovery motion, the State did not dispute defendant's assertion that the stop was illegally based on racial profiling. The court found that "defendant fits within the *184 class of motorists who could be entitled to racial profiling discovery." (Emphasis added). The State successfully argued, however, that defendant's intervening criminal acts attenuated any taint that may have attached to the stop, and the judge denied discovery on that ground.
In this appeal, defendant argues that the designated judge erred in denying his motion for discovery in view of the judge's finding, and the State's concession, that defendant had established a "colorable basis" of racial profiling under Ballard, 331 N.J.Super. at 541, 752 A.2d 735.
"There is no dispute that `racial profiling' violates due process and equal protection rights when a defendant's car is stopped, and others are not, merely because the driver or passenger is a minority." Clark, supra, 345 N.J.Super. at 355, 785 A.2d 59 (citations omitted). Although the State conceded and the designated judge accepted defendant's assertion that the stop was based on racial profiling for the purposes of the discovery motion, we are of the view that Trooper Estok's simultaneous stop of the Toyota with two white occupants and the Buick in which defendant was a passenger raises a substantial question of whether this was a racially motivated stop, without even reaching the attenuation issue.
In State v. Francis, 341 N.J.Super. 67, 775 A.2d 79 (App.Div.2001), the defendant was convicted of possession of cocaine and possession with intent to distribute, hindering prosecution and resisting arrest. The charges stemmed from a state trooper stopping the African-American defendant's car on the Turnpike after observing it swerve back and forth across lanes a few times. The trooper testified that immediately after the vehicle stopped "the driver exited from the vehicle, ran towards the front of his car around to the right, back around his car" and when ordered to stop, "retrieved a package from the right front portion of his pants and threw it across the highway." Id. at 71, 775 A.2d 79. The defendant "continued to run past [the trooper's] vehicle," and though directed to stop, pushed the trooper before finally being "subdued." Id. at 72, 775 A.2d 79. When the defendant was placed in the trooper's car, the package that the defendant had thrown was retrieved from the shoulder of the Turnpike. The package contained 3.2 ounces of crack cocaine. Ibid.
On direct appeal, the defendant argued ineffective assistance of counsel because trial counsel failed to raise racial profiling as an issue. The defendant, therefore, sought to have the matter remanded to the trial court for discovery on the racial profiling issue. Id. at 73-74, 775 A.2d 79. We held that because the defendant's arrest occurred between the publication of Soto and the Interim Report, his claim of racial profiling warranted a remand to the designated judge for discovery and "to the trial judge for further relief if the discovery warrants such application." Id. at 76-77, 775 A.2d 79.
Here, defendant maintains that it would be unfair to treat him in a manner dissimilar to the defendant in Francis. We agree.
The attenuation issue is relevant to the ultimate determination of whether the stop was racially motivated, but not to whether defendant is entitled to discovery. "[D]efendant has the burden of proving that barring the [PCR] petition would lead to injustice." State v. Mitchell, 126 N.J. 565, 587, 601 A.2d 198 (1992). To carry that burden on a racial profiling claim, a defendant must have access to the racial profiling discovery. Rule 3:13-3 provides for pre and post-indictment discovery of "relevant material." The only *185 condition on post-indictment discovery is relevance. See State v. Long, 119 N.J. 439, 490, 575 A.2d 435 (1990). We see no difference between a defendant's right to post-indictment, pre-trial discovery pursuant to R. 3:13-3 and post-conviction discovery relevant to racial profiling. Francis, supra, 341 N.J.Super. at 76-77, 775 A.2d 79; Payton, supra, 342 N.J.Super. at 111, 775 A.2d 740; Ross, supra, 335 N.J.Super. at 541, 763 A.2d 281; Ballard, supra, 331 N.J.Super. at 559-60, 752 A.2d 735.
A defendant must, of course, present a "colorable claim" of racial profiling to qualify for discovery, Kennedy, supra, 247 N.J.Super. at 25, 588 A.2d 834, but, here, the State has conceded that defendant has done so for the purpose of the discovery motion. We need not, therefore, decide whether the simultaneous stop of the two vehicles obviates defendant's "colorable claim." Accordingly, the matter is remanded to allow defendant to obtain the discovery relevant to his racial profiling claim.
We emphasize that our holding is limited to the discovery issue. We make no determination of whether the stop was based on racial profiling or whether defendant's post-stop conduct attenuated any taint from the allegedly illegal stop. That determination shall be made after defendant has obtained discovery and made his arguments to the designated judge.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The attenuation doctrine is an established exception to the Fourth Amendment exclusionary rule. State v. Johnson, 118 N.J. 639, 652-53, 573 A.2d 909 (1990). Under the attenuation doctrine, "if the causal connection between the illegal conduct [by law enforcement] and obtaining the evidence has become so attenuated as to dissipate the taint, the evidence is admissible." State v. James, 346 N.J.Super. 441, 453, 788 A.2d 334 (App.Div.), certif. denied, 174 N.J. 193, 803 A.2d 1164 (2002); See, State v. Badessa, 185 N.J. 303, 885 A.2d 430 (2005).
[2] See State v. Lee, 381 N.J.Super. 429, 886 A.2d 1066 (App.Div.2005) (Fuentes, J.A.D., dissenting) for a contrary view.
[3] U.S. Const. amend. VI.
[4] Defendant's trial counsel died between the time of defendant's sentencing and PCR petition.
[5] Defendant could have advanced the argument with respect to the suppression motion that the stop was based on racial profiling and the cocaine should be suppressed as the fruit of an illegal racial profiling stop. He did not make that argument, however. We will discuss defendant's racial profiling claims more fully herein.