920 A.2d 80
STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CALVIN LEE, DEFENDANT–APPELLANT.

Argued January 17, 2007—Decided April 19, 2007.

*Susan Brody,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Paul H. Heinzel,* Deputy Attorney General, argued the cause for respondent (*Stuart Rabner,* Attorney General of New Jersey, attorney).

Justice WALLACE, JR. delivered the opinion of the Court.

In this case, defendant appeals from the denial of his petition for post-conviction relief and, specifically, from the denial of his motion for discovery to support his claim that his vehicle stop emanated from racial profiling. In denying that motion, the court found that even assuming defendant was correct in his claim, the drug evidence obtained after the stop would not be excluded because defendant's assault on the officer purged the taint of the initial stop. Following the denial of his petition, defendant appealed. With one judge dissenting, the Appellate Division affirmed. We now reverse and remand. We conclude that it was premature to decide the attenuation issue prior to discovery.

I.

At the underlying trial, the State presented evidence to show that on May 22, 1995, at approximately 12:15 a.m., State Troopers Steven Parisi and Lisa Mayer were patrolling Interstate 80 in Paterson when Parisi noticed a Dodge pickup truck moving in and out of its traffic lane. The truck was traveling around 38 miles per hour in a 55 mile per hour zone. Parisi activated his overhead lights to pull the truck over. He observed the passenger in the truck, later identified as defendant Calvin Lee, begin to move

around. Both occupants in the truck were African–American males.

The truck continued to drive for about a mile before it came to a stop. When Parisi approached the truck and asked the driver Ricky Lee for his license and registration, the driver claimed he had no identification on him. Parisi then asked who was the owner of the truck. Both the driver and defendant stated that they did not know. Believing the vehicle might be stolen, Parisi asked the driver to remove the key and hand it to him. As the driver did so, defendant began to reach between the two bucket seats, but Parisi immediately directed both men to place their hands on the dashboard. Defendant protested but eventually complied with the command.

When Parisi radioed for backup, the two occupants attempted to flee the vehicle. Parisi positioned himself in such a way that he was able to prevent the men from escaping. While defendant again reached between the seats, the driver attempted to move the gear shift into drive, but he was unable to do so because the key had been removed. Parisi then advised the occupants that they were under arrest.

At that point, the driver opened his door and fled into the nearby woods. Defendant also tried to flee, but Parisi blocked the passenger side of the car. Defendant then tried to exit through the driver's side door, once again reaching for the area between the seats. Parisi, with his weapon drawn, reached into the truck and tried to grab defendant. A struggle ensued. Defendant eventually broke free and ran off in the same direction as the driver. After Parisi pursued defendant for a short distance, he returned to the vehicle and searched it. Parisi found several bags of cocaine and marijuana in the area where defendant had been reaching. Defendant and the driver were eventually apprehended.

Defendant and codefendant, Ricky Lee, were charged with third-degree possession of cocaine, *N.J.S.A.* 2C:35–10a(1); first-degree possession of cocaine with intent to distribute, *N.J.S.A.*

2C:35–5a(1) and 2C:35–5b(1); fourth-degree possession of marijuana, *N.J.S.A.* 2C:35–10a(3); and third-degree possession of marijuana with intent to distribute, *N.J.S.A.* 2C:35–5a(1) and 2C:35–5b(11). Defendant was also charged with fourth-degree aggravated assault on Parisi, *N.J.S.A.* 2C:12–1b(5)(a); fourth-degree resisting arrest, *N.J.S.A.* 2C:29–2a; and second-degree escape, *N.J.S.A.* 2C:29–5.

Defendant's motion to suppress the evidence was denied on February 26, 1997. He was tried and convicted of all charges. In a separate trial, codefendant Ricky Lee was also found guilty. Defendant was sentenced to an aggregate term of fifty-six and one-half years imprisonment, subject to an eighteen and one-half year period of parole ineligibility. Defendant and codefendant Lee filed separate appeals. After consolidating the two appeals for purposes of the opinion, the Appellate Division affirmed in an unpublished opinion. The Supreme Court subsequently denied certification. 163 *N.J.* 396, 749 *A.2d* 370 (2000).

Defendant filed his petition for post-conviction relief on September 28, 2000. By letter dated March 29, 2001, defendant sought discovery to support his claim that the vehicle stop was the product of racial profiling. After receiving defendant's motion for discovery, the State referred defendant to an Administrative Order directing all discovery motions based on racial profiling to Judge Barisonek. Defendant then filed a formal notice of motion for discovery with the court.

Pursuant to the Supreme Court's Administrative Order dated January 31, 2000, Judge Barisonek was designated to hear all motions for discovery relating to racial profiling by the New Jersey State Police. Subsequently, on September 12, 2000, Judge Barisonek entered a general management order relating to racial profiling issues and discovery. The order provided, in part, that

> [t]he State of New Jersey through representatives of the Attorney General's Office agrees for the purposes of these criminal litigations that from January 1, 1988 through April 20, 1999, a colorable basis to allow discovery regarding racial profiling has been established and that defendants perceived to be African–American, Black or Hispanic are entitled to discovery for motor vehicle stops that

originated as a result of observations made by State Troopers on the New Jersey Turnpike, its extensions, Routes 80, 78, the Garden State Parkway and any and all other interstate roadways or parkways, whether the actual stop was on or off the interstate. This is not meant to limit discovery applications by defendants based on claims of racial profiling by the State Police on other roadways within the State of New Jersey[.]

In April 2002, the State moved to dismiss defendant's discovery motion. The State also filed motions to dismiss in several other unrelated, but similar cases. In a consolidated hearing held on May 3, 2002, Judge Barisonek heard oral argument on the State's motions. The State argued that the criminal conduct committed in each of the cases subsequent to the stop of the vehicle constituted a break in the chain of events between the stop and the discovery of contraband. Because of the convictions, the State contended that "it's been definitely established that the causal chain has been broken in each case and [the] discovery applications can be dismissed."

In opposition, one of the attorneys argued he needed the profiling discovery to attack the credibility of the trooper because he wanted to challenge the validity of the asserted intervening act. Another defense counsel agreed, urging that if the profiling information had been available at the time of trial, he would have been able to convince the jury that the trooper was not credible. Counsel for defendant herein argued that when you consider whether a subsequent act attenuated the initial taint, the court must evaluate the time of the events, the flagrancy of the police misconduct, and the intervening circumstances. He argued that a fair evaluation of those factors should result in the conclusion that the evidence of the drugs, but not the assault, should have been suppressed.

Judge Barisonek summarized the opposition to the State's motions as follows:

In our cases, Calvin and Ricky Lee and Nelson Gonzalez and Alfonso Herrera, it is alleged that in fact the discovery of the various drugs is relevant because it may affect the credibility issues as was determined by the trier of the fact in their trials. They also allege if the jury heard that testimony, it may choose to disbelieve the troopers and in fact find that the actions on the part of the troopers were the illegal

acts and it had nothing to do with the alleged intervening illegal act as committed by any of the other defendants.

In addition to that it is argued that because of the egregious conduct on the part of the State Police by engaging in acts of racial profiling, that even if there was a subsequent intervening act that occurred, that the constitutional infringements of the defendant's rights as a result of racial profiling is so egregious, the State should be barred from using that particular evidence. Also it should be barred because of the nexus between the stop, the police misconduct, the subsequent arrest and finding of the evidence that incriminates the defendants.

Actually, it is an interesting issue, quite honestly, in terms of the credibility issue because it may have some relevancy to the fact finder's obligation. None of these issues had ever been addressed in any other decision, including all the cases I cited and discussed up until now.

Although the court observed that the credibility issue was an interesting one "because it may have some relevancy to the fact finder's obligation," the court agreed with the State's position that the criminal conduct committed after the initial stop constituted a sufficient break in the chain of events that profiling discovery would not affect the outcome. Consequently, the court granted the State's motion to dismiss the request for discovery.

After defendant's motion for leave to appeal was denied, a different judge denied defendant's petition for post-conviction relief. Defendant appealed that denial. With one judge dissenting, the Appellate Division affirmed, largely on the basis of Judge Barisonek's opinion. *State v. Lee*, 381 *N.J.Super.* 429, 433–37, 886 *A.*2d 1066 (App.Div.2005). The dissenting judge contended that the attenuation doctrine analysis was not necessary because the underlying constitutional violation was so egregious. *Id.* at 448, 886 *A.*2d 1066. Further, the dissent noted that the majority failed to appreciate that "defendant's detention was complete before the occurrence of any intervening act," and that the physical confrontation occurred after the alleged unconstitutional arrest. *Id.* at 443–44, 886 *A.*2d 1066. Therefore, because the drug evidence "was irrevocably linked to the illegal stop[,]" it would have been seized in any event. *Id.* at 444, 886 *A.*2d 1066. Because of the dissent in the Appellate Division, this case is before us as of right. *R.* 2:2–1(a)(2).

## II.

Defendant contends that it was error for the court to conclude that the attenuation exception to the exclusionary rule applied. He claims that this inquiry requires the court to make a value judgment after considering the factors set forth in *State v. Barry*, 86 *N.J.* 80, 87, 429 *A.*2d 581, *cert. denied*, 454 *U.S.* 1017, 102 *S.Ct.* 553, 70 *L.Ed.*2d 415 (1981), as they relate to the purposes of the exclusionary rule for the deterrence of illegal arrests and the preservation of the integrity of the judiciary, as well as the competing purpose of discovering the truth at trial. Defendant argues that the three *Barry* factors—(1) the temporal proximity of the arrest; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct—must be weighed in evaluating whether to apply the attenuation doctrine. *See ibid.* Thus, defendant concludes that it was premature to deny him an opportunity to obtain evidence relevant to a proper weighing of those factors. Additionally, defendant asserts that even if attenuation may apply to the evidence of the assault, it should not apply to the seizure of the drugs because that seizure would have occurred even in the absence of the assault.

The State disagrees and urges that we affirm the judgment for the reasons expressed by the majority in the Appellate Division. Further, the State adds that the stop was not even arguably based on racial profiling, and that defendant's conduct made the limited weapons search of the vehicle a public safety exigency, thus purging the taint of any possible racial profiling claim.

## III.

The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect the right of the people to be free from "unreasonable searches and seizures." *U.S. Const.* amend. IV; *N.J. Const.* art. I, ¶ 7. The exclusionary rule was spawned to discourage violations of those rights. *State v. Burris*, 145 *N.J.* 509, 520, 679 *A.*2d 121 (1996). Pursuant to the exclusionary rule, the State may not introduce

evidence obtained from an unlawful search or seizure by the police. *Wong Sun v. United States,* 371 *U.S.* 471, 487–88, 83 *S.Ct.* 407, 417, 9 *L.Ed.*2d 441, 455 (1963).

■■■ "The primary purpose of the exclusionary rule is to deter future unlawful police conduct by denying the prosecution the spoils of constitutional violations." *State v. Badessa,* 185 *N.J.* 303, 310, 885 *A.*2d 430 (2005) (citing *State v. Evers,* 175 *N.J.* 355, 376, 815 *A.*2d 432 (2003)) (internal quotation marks omitted); *see also Brown v. Illinois,* 422 *U.S.* 590, 599–600, 95 *S.Ct.* 2254, 2260, 45 *L.Ed.*2d 416, 425 (1975) (noting that rule "compel[s] respect for the constitutional guaranty in the only effectively available way— by removing the incentive to disregard it"). The rule also "advances the imperative of judicial integrity and removes the profit motive from lawless behavior." *Badessa, supra,* 185 *N.J.* at 311, 885 *A.*2d 430 (citations and internal quotation marks omitted).

■■■ However, not all evidence derived from an unlawful search and seizure will be excluded from evidence. In determining whether it is appropriate to exclude evidence obtained after an unreasonable search and seizure, we have focused on whether "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.'" *Wong Sun, supra,* 371 *U.S.* at 487, 83 *S.Ct.* at 417, 9 *L.Ed.*2d at 455 (quoting *Nardone v. United States,* 308 *U.S.* 338, 341, 60 *S.Ct.* 266, 268, 84 *L.Ed.* 307, 312 (1939)).

In *Brown, supra,* the United States Supreme Court identified three factors to aid in that determination: (1) the temporal proximity between the illegal conduct and the challenged evidence, (2) "the presence of intervening circumstances," and (3) the flagrancy and purpose of the police misconduct. 422 *U.S.* at 603–04, 95 *S.Ct.* at 2261–62, 45 *L.Ed.*2d at 427. We adopted that test in *Barry, supra,* 86 *N.J.* at 87, 429 *A.*2d 581, and applied it recently in *Badessa, supra,* 185 *N.J.* at 312, 885 *A.*2d 430.

## A.

Defendant argues that the reasoning of two other Appellate Division decisions decided after the present case supports his contention that the attenuation doctrine should not be considered until after discovery. Before discussing those cases, we briefly outline the history of the racial profiling cases.

As a result of numerous cases challenging motor vehicle stops based on racial profiling, this Court entered an Administrative Determination and Order on January 31, 2000. That order was issued in response to the motion of the Attorney General that sought "centralized judicial management of pending litigation in which the defense of selective prosecution based on allegations of racial profiling by the New Jersey State Police in criminal cases arising out of motor vehicle stops has been raised and discovery relevant to such defense has been sought[.]" As noted above, this Court designated Judge Barisonek as the sole judge to hear all discovery motions related to racial profiling. The Court also stayed all motions for discovery relating to racial profiling until the Appellate Division decided "the appeals in *State v. Anthony Ballard, et al.,* A–786–99T5, *State v. Ramona Maiolino, et al.,* A–2256–99T3, and *State v. Perry Dickerson, et al.,* A–2278–99T1." Additionally, the Court ordered the Presiding Judge for Administration to designate a single Part of the Appellate Division to accelerate the disposition of those appeals. Judge Stern's Part was subsequently designated to hear those appeals.

In June 2000, the Appellate Division decided the three consolidated appeals in the case captioned *State v. Ballard,* 331 *N.J.Super.* 529, 752 *A.*2d 735 (App.Div.2000). The facts were different in each case, but the crucial issue of discovery as it related to the issue of selective enforcement of the motor vehicle laws that led to the motor vehicle stops was the same. *Id.* at 538, 752 *A.*2d 735. Writing for the panel, Judge Stern recognized that the defendants "must establish a colorable basis for a claim of selective enforcement" before the State will be ordered to provide discovery. *Id.* at 541, 752 *A.*2d 735 (citation omitted). Judge Stern found that

the combination of the conclusions reached by Judge Francis in *State v. Soto*, 324 *N.J.Super.* 66, 734 *A.2d* 350 (Law Div.1996), the April 1999 *Interim Report of the State Police Review Team Regarding Racial Profiling Allegations (Interim Report)*, and "the lack of any presentation of facts that indicated a change in the policy or practice of the State Police between the *Soto* decision of March 1996 and the *Interim Report* of April 1999" satisfied the threshold to require discovery. *Ballard, supra*, 331 *N.J.Super.* at 542–43, 752 *A.2d* 735. The evidence in *Soto* included "substantial statistical evidence tending to show the disproportionate stopping of minority motorists on the Turnpike," *id.* at 543, 752 *A.2d* 735, and the *Interim Report* made clear "that troopers statewide may have been influenced by stereotypical profiles of drug couriers and may have treated minorities differently than others in making routine traffic stops and in post-stop conduct," *id.* at 546, 752 *A.2d* 735. Because there was no evidence that suggested the State Police policy in respect of racial profiling had changed between the time examined in *Soto* and the issuance of the *Interim Report* on April 20, 1999, Judge Stern held that the defendants, who had each been stopped within that period of time, were "entitled to discovery in order to pursue their claims of selective enforcement." *Id.* at 548, 752 *A.2d* 735; *see State v. Clark*, 345 *N.J.Super.* 349, 358, 785 *A.2d* 59 (App.Div.2001); *State v. Payton*, 342 *N.J.Super.* 106, 111, 775 *A.2d* 740 (App.Div.2001); *State v. Francis*, 341 *N.J.Super.* 67, 77, 775 *A.2d* 79 (App.Div.2001); *State v. Ross*, 335 *N.J.Super.* 536, 540 n. 5, 763 *A.2d* 281 (App.Div.2000), *certif. denied*, 167 *N.J.* 637, 772 *A.2d* 939 (2001).

## B.

We turn now to review the Appellate Division decisions consistent with *Ballard*, but contrary to the majority of the panel in the present matter. In *State v. Ball*, 381 *N.J.Super.* 545, 550, 887 *A.2d* 174 (App.Div.2005), the defendant appealed from an order denying his petition for post-conviction relief, in which he alleged ineffective assistance of counsel and racial profiling. The defen-

dant argued that discovery should have been granted on his racial profiling claim. *Id.* at 558, 887 *A*.2d 174. For the purposes of the discovery request, the State did not dispute the defendant's contention that the defendant was stopped based on his race, but similar to the present case, successfully argued that the "defendant's intervening criminal acts attenuated any taint that may have attached to the stop." *Id.* at 560, 887 *A*.2d 174. On appeal, the panel reversed, explaining that "[t]he attenuation issue is relevant to the ultimate determination of whether the stop was racially motivated, but not to whether [the] defendant is entitled to discovery." *Id.* at 562, 887 *A*.2d 174. The panel concluded that because the defendant has the burden of proof on a racial profiling claim, and because "*Rule* 3:13–3 provides for pre- and post-indictment discovery of 'relevant material,'" the defendant was entitled "to obtain the discovery relevant to his racial profiling claim." *Id.* at 562–63, 887 *A*.2d 174.

In *State v. Gonzalez*, 382 *N.J.Super.* 27, 29, 887 *A*.2d 704 (App.Div.2005), the panel considered two appeals in which the underlying motions were argued before Judge Barisonek at the same time as defendant's motion in the present matter. The defendants appealed from separate orders denying each defendant's motion for post-conviction relief, alleging that they were denied profiling discovery. *Id.* at 30, 887 *A*.2d 704. The defendants sought discovery as part of their effort to establish an unlawful profiling stop to suppress the drugs found in their vehicle. *Id.* at 30–31, 887 *A*.2d 704. They argued that at the time of their trial on the charges for assault, attempted murder, and weapons offenses, they were unable to challenge the trooper's credibility on the basis of his alleged improper stopping of their vehicle. *Id.* at 31, 887 *A*.2d 704. The panel reasoned that "[g]iven the background of the discovery issue in cases where profiling was alleged, as set forth in detail in *State v. Ballard,* ... we find no justification for denying the[ ] defendants the discovery they sought." *Ibid.* The panel concluded that, at least with respect to the defendants' drug convictions, it was premature to determine whether the motor vehicle stop was "sufficiently attenuated to

uphold admission of the challenged evidence with respect to any of defendants' convictions." *Id.* at 41, 887 *A.*2d 704. Judge Stern, who was also on the panel in *Ball,* concurred in the result, emphasizing that "it is prudent to consider the attenuation issue only after it is determined that [the] defendants are the victims of racial profiling, not before." *Id.* at 44, 887 *A.*2d 704.

## C.

█ In the present appeal, defendant contends that he established a colorable claim of racial profiling to support his discovery motion. He asserts that the State has apparently conceded that he presented a colorable basis for discovery citing Judge Barisonek's order dated September 12, 2000. That order provides in part that "for the purposes of these criminal litigations that from January 1, 1988 through April 20, 1999, a colorable basis to allow discovery regarding racial profiling has been established[.]" Before Judge Barisonek, the State never suggested that defendant failed to present a colorable claim of racial profiling. Despite that, for the first time in this appeal, the State argues that the facts here are so extreme that the only rational conclusion is that no racial profiling occurred. In light of the September 12, 2000 order, which, for purposes of establishing a colorable basis to allow discovery, covers the time of the vehicle stop herein, we find no need to address that argument.

We conclude that defendant is entitled to discovery in an effort to support his racial profiling claim. We agree with the articulation in *Ball, supra,* that our rules authorize "post-conviction discovery relevant to racial profiling." 381 *N.J.Super.* at 562, 887 *A.*2d 174. The key to discovery pursuant to *Rule* 3:13–3(c) is that the discovery must be relevant. The State does not challenge the relevancy of the discovery sought by defendant. Rather, the State seeks to avoid the discovery process by skipping directly to the ultimate outcome.

It is premature to address the State's attenuation argument because it is not yet ripe. The issue that is ripe is whether

defendant can meet his "burden of proving that barring the [post-conviction relief] petition would lead to injustice." *State v. Mitchell,* 126 *N.J.* 565, 587, 601 *A.*2d 198 (1992) (citation omitted). Unless defendant develops through discovery that the motor vehicle stop resulted from inappropriate conduct of the police, there will not be a need to address the attenuation argument. If defendant is successful in proving that racial profiling was implicated, then the State may offer its attenuation argument. At that time, the court should weigh the *Barry* factors in light of the evidence to determine if attenuation applies.

## IV.

We reverse the judgment below and remand to the trial court for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.