926 A.2d 340

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
MARCELLUS R. WILLIAMS, A/K/A MARCULLUS
R. WILLIAMS, DEFENDANT–RESPONDENT.

Argued March 6, 2007—Decided July 12, 2007.

4

*Hillary K. Horton,* Deputy Attorney General, argued the cause for appellant (*Stuart Rabner,* Attorney General of New Jersey, attorney).

*Frank J. Pugliese,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney; *Mr. Pugliese* and *Alan I. Smith,* Designated Counsel, on the briefs).

Justice ALBIN delivered the opinion of the Court.

In *State v. Crawley,* 187 *N.J.* 440, 901 *A.*2d 924, *cert. denied,* —— *U.S.* ——, 127 *S.Ct.* 740, 166 *L.Ed.*2d 563 (2006), we determined that a defendant commits the crime of obstruction if he disobeys a police command and flees from an investigatory stop—even an unconstitutional one. In this appeal, we must decide whether defendant who resisted and fled from a presumed unconstitutional investigatory stop and who was later arrested for obstruction is entitled to suppression of the handgun seized incident to his lawful arrest.[1]

We now hold that defendant's resistance and flight, which amounted to obstruction, broke the link in the chain between the initial unconstitutional stop and the later seizure of the weapon. Under such circumstances, suppression of the evidence is not warranted by the exclusionary rule.

I.

A.

Shortly after 2 a.m. on March 26, 2002, while on patrol in a marked car, Elizabeth police officer Paul McRae and his partner received a dispatch from headquarters that a black man wearing a

---

[1] Because we presume the investigatory stop to be unconstitutional, as we will explain later, for simplicity's sake we will simply refer to it as an unconstitutional stop throughout the opinion.

black jacket was possibly selling drugs at 1025 Flora Street in the City of Elizabeth.[2] At the time, the two officers did not know the source of that information. They responded to the address and observed two black men wearing black jackets in front of the residence. One of the men walked away as the patrol car approached while defendant Marcellus Williams, "apparently shocked and unnerved" by the unexpected presence of the two uniformed officers, remained. The officers did not pursue the individual who left the scene because he did nothing to arouse their suspicions. Indeed, other than the fact that defendant matched the description given by headquarters, the officers did not observe any sign that defendant was involved in drug dealing. After exiting their patrol car, the officers approached defendant for the purpose of interviewing him.

The neighborhood surrounding 1025 Flora Street was known to Officer McRae as an area rampant with weapons and drug-dealing offenses. Officer McRae had made approximately 100 drug-related arrests in that area, and in one-half of those cases the suspects were armed with weapons. The two officers also had received instruction at the police academy that drug dealers commonly carry weapons. Given those factors and the late hour, when the officers reached defendant, Officer McRae asked defendant "to place his hands on top of his head" so that he and his partner could pat him down for their safety.

In response to that direction, defendant pushed Officer McRae and fled. The pursuit that ensued did not last long. After running approximately 100 feet, defendant stumbled and fell to the ground. The two officers then arrested and handcuffed defendant and, while patting him down, found a handgun tucked in his waistband.

A Union County grand jury returned two indictments, one charging defendant with third-degree unlawful possession of a

---

[2] This statement of facts is based on the testimony of Officer McRae at a motion to suppress hearing.

weapon, *N.J.S.A.* 2C:39–5(b), and fourth-degree obstructing the administration of law or other governmental function, *N.J.S.A.* 2C:29–1(b), and another charging him with second-degree possession of a weapon by a person previously convicted of a crime, *N.J.S.A.* 2C:39–7(b).

### B.

Defendant filed a motion to suppress the handgun as evidence at trial, claiming that the seizure of the weapon was the product of an unconstitutional stop and search. After a pre-trial hearing at which only Officer McRae testified, the trial court denied the motion to suppress. The court determined that given the totality of the circumstances, the "facts [were] sufficient to justify the investigatory stop and pat-down of [defendant]" under the standards set forth in *Terry v. Ohio,* 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968). The court also held that the officers seized the handgun incident to a lawful arrest for obstructing the administration of law pursuant to *N.J.S.A.* 2C:29–1.

After a jury trial on the first indictment, defendant was convicted of the weapons possession charge, but acquitted of obstructing the administration of law. Following the verdict, defendant pled guilty to the second indictment's charge of possessing a weapon by a person previously convicted of a crime. On that charge, the court sentenced defendant to a nine-year term of imprisonment with a five-year period of parole ineligibility. On the weapons possession charge, defendant was sentenced to a concurrent four-year term.

Defendant appealed both the denial of his suppression motion and trial-related issues.

### C.

The Appellate Division reversed the trial court's denial of defendant's motion to suppress, vacated the judgments of conviction, and remanded to the trial court for further proceedings in

light of the suppression of the handgun. *State v. Williams*, 381
*N.J.Super.* 572, 593, 887 *A.*2d 190 (App.Div.2005).[3] The panel first
reasoned that the dispatch received from headquarters, standing
alone without corroborative evidence that defendant was involved
in drug dealing, did not provide the officers with a reasonable and
articulable suspicion that criminal activity was afoot. *Id.* at 587–
88, 887 *A.*2d 190. On that basis, the panel concluded that the
officers engaged in an unconstitutional investigatory stop. *See id.*
at 588, 887 *A.*2d 190.

Next, the panel found that defendant had a "constitutional right
to refuse to participate in the State's unlawful exercise of dominion
over [his] right to be free from an unreasonable search and
seizure." *Id.* at 591, 887 *A.*2d 190. Following that logic, defen-
dant could not be "lawfully arrested for violating *N.J.S.A.* 2C:29–
1(a) by fleeing from an unlawful *Terry* stop." *Ibid.* Therefore,
the panel determined that the search of defendant and the seizure
of the handgun were incident to an *unlawful* arrest for obstruc-
tion, requiring the gun's suppression. *Id.* at 593, 887 *A.*2d 190.

The panel added that it did not mean to suggest that a
"defendant could not be lawfully arrested for fleeing from an
unlawful investigatory stop" if the flight created a " 'high potential
for causing injury to law enforcement officials.' " *Id.* at 592–93,
887 *A.*2d 190 (quoting *State v. Casimono*, 250 *N.J.Super.* 173, 185,
593 *A.*2d 827 (App.Div.1991), *certif. denied*, 127 *N.J.* 558, 606 *A.*2d
370, *cert. denied*, 504 *U.S.* 924, 112 *S.Ct.* 1978, 118 *L.Ed.*2d 577
(1992)). The panel, however, maintained that "defendant's flight
from this unlawful investigatory stop did not create a danger to
the officers and, thus, did not produce the element necessary to
purge the taint of the officers' unlawful search and seizure." *Id.*
at 592, 887 *A.*2d 190. The panel squarely held that "a citizen's

---

[3] Because the panel reversed the convictions on the suppression issue, thus
requiring a new trial, the panel declined to address defendant's challenge to the
propriety of the jury charge and his sentence. *Williams, supra*, 381 *N.J.Super.* at
578, 887 *A.*2d 190.

non-violent flight from an unreasonable search and seizure cannot be validly criminalized." *Id.* at 577, 887 *A.*2d 190.

We granted the State's motion to stay the Appellate Division's opinion pending an appeal to this Court and later granted its petition for certification. 188 *N.J.* 355, 907 *A.*2d 1014 (2006).

## II.

The State contends that the Appellate Division committed two errors in suppressing evidence of the handgun. First, contrary to the panel's decision, the State argues that the officers possessed reasonable and articulable suspicion to fear for their safety in their street encounter with defendant, constitutionally justifying the pat down. Alternatively, the State submits that even if the officers' suspicions did not meet the requisite constitutional standard for an investigatory stop, when defendant struck Officer McRae and took flight, he committed the offense of obstruction, which broke the causal chain between the unconstitutional stop and the later discovery of the concealed weapon. By that reasoning, the handgun was admissible in evidence because it was seized incident to a lawful arrest.

On the other hand, defendant asks this Court to uphold the Appellate Division's suppression of the evidence based on the initial unconstitutional stop that was generated by the uncorroborated tip. Defendant next argues that, in addition to acting without the necessary suspicion demanded by the Constitution, the officers did not have an objective good faith basis for stopping him or patting him down as required by the obstruction statute, but rather acted arbitrarily, leading to his wrongful arrest for obstruction. He thus concludes that the seizure of the gun was incident to an unlawful arrest, requiring suppression. Last, he argues that even if there were a valid basis for the obstruction charge, his flight was a direct result of the unconstitutional investigatory stop, and the taint from that stop had not dissipated by the time of the search that uncovered the handgun. According to defendant, the need to deter police misconduct, which is the primary policy

reason for the exclusionary rule, supports suppression of the evidence.

## III.

Both the Fourth Amendment to the United States Constitution and Article 1, Paragraph 7 of the New Jersey Constitution prohibit law enforcement officers from conducting "unreasonable searches and seizures." [4] Under those constitutional provisions, an investigatory stop is valid "if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." *State v. Pineiro*, 181 *N.J.* 13, 20, 853 *A.*2d 887 (2004) (citation and internal quotation marks omitted). During such a stop, if the police officer believes that the suspect "may be armed and presently dangerous," then he may conduct a pat down. *Terry, supra,* 392 *U.S.* at 30, 88 *S.Ct.* at 1884, 20 *L.Ed.*2d at 911.

In this case, the initial question is whether, as a safety precaution, Officer McRae and his partner had a reasonable and articulable suspicion to frisk defendant for weapons. The officers had responded to 1025 Flora Street in Elizabeth—a high-crime area—on a report of a black man wearing a black jacket *possibly* selling drugs in that area. On their arrival at the named address, shortly after 2 a.m., the officers saw defendant and another man, both of whom fit the description. The other man walked away, and defendant, who remained, appeared shocked by the arrival of the police. Nevertheless, the officers observed nothing to substantiate the report of possible drug dealing. When the officers approached defendant to speak with him, Officer McRae directed defendant "to place his hands on top of his head" so that they could pat him down for safety.

---

4 The Fourth Amendment and Article 1, Paragraph 7 provide in identical language: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."

The propriety of the investigatory stop in this case is doubtful when viewed against the jurisprudence developed under both the Fourth Amendment and Article 1, Paragraph 7. *See Florida v. J.L.,* 529 *U.S.* 266, 271–72, 120 *S.Ct.* 1375, 1379, 146 *L.Ed.*2d 254, 261 (2000) (finding no reasonable suspicion to justify investigatory stop based on uncorroborated tip from anonymous caller that young black male standing at bus stop and wearing plaid shirt was carrying gun); *State v. Rodriguez,* 172 *N.J.* 117, 121–25, 131, 796 *A.*2d 857 (2002) (finding that police did not have reasonable suspicion to conduct investigatory stop based on anonymous phone tip describing drug couriers expected to arrive at bus terminal because tip was solely corroborated by "innocent details of defendant's appearance" at terminal).

■ However, we need not decide whether the officers acted without reasonable and articulable suspicion in attempting to conduct the pat down because we would not suppress the later discovery of the handgun even if the investigatory stop did not meet acceptable constitutional standards. We reach that result because defendant was obliged to submit to the investigatory stop, regardless of its constitutionality. Instead, defendant physically resisted the pat down by pushing Officer McRae aside and taking flight, thereby endangering the police, himself, and the public. In obstructing the officers, defendant committed a criminal offense, which led to his arrest and to the discovery of the handgun incident to that lawful arrest.[5] Obstructing the police constituted a break in the chain from the investigatory stop, which we will presume was unconstitutional. The taint from that initial stop was significantly attenuated by defendant's criminal flight that caused

---

[5] We find of no consequence the fact that defendant was ultimately acquitted by the jury on the obstruction charge. Regardless of the final outcome, the trial court found that Officer McRae and his partner had probable cause to arrest defendant for obstruction. There is sufficient credible evidence in the record to support that finding. *See State v. Johnson,* 42 *N.J.* 146, 161–62, 199 *A.*2d 809 (1964).

the handgun's later seizure, and accordingly the application of the exclusionary rule is unwarranted in this case.

## IV.

■ We have recently held that a person has no constitutional right to flee from an investigatory stop, "even though a judge may later determine the stop was unsupported by reasonable and articulable suspicion." *State v. Crawley*, 187 *N.J.* 440, 458, 901 *A.*2d 924, *cert. denied*, —— *U.S.* ——, 127 *S.Ct.* 740, 166 *L.Ed.*2d 563 (2006). Under New Jersey's obstruction statute, when a police officer commands a person to stop, or as in this case orders him to place his hands on his head for a pat-down search, that person has no right to take flight or otherwise obstruct the officer in the performance of his duty. *Id.* at 451, 458–59, 901 *A.*2d 924. Indeed, a person commits the fourth degree crime of obstruction if he "prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." *N.J.S.A.* 2C:29–1(a).

In *Crawley*, *supra*, we determined that a defendant could be convicted of violating the obstruction statute even if he fled from an unconstitutional investigatory stop. 187 *N.J.* at 460–61, 901 *A.*2d 924. In that case, two police officers while on patrol received a dispatch of a man armed with a gun outside a bar. *Id.* at 444–45, 901 *A.*2d 924. The officers immediately responded, and observed Crawley, the defendant, who matched exactly the dispatch's description, walking in a direction away from the bar. *Id.* at 444, 901 *A.*2d 924. As the patrol car pulled up to Crawley, one of the officers called out, "Police. Stop. I need to speak with you." *Ibid.* Crawley then fled, and a foot chase ensued, leading to his capture at the bottom of a stairwell. *Id.* at 444–45, 901 *A.*2d 924. No weapon was found on him, although he discarded glassine envelopes of suspected drugs during his flight. *Id.* at 445, 901 *A.*2d 924. Crawley was found guilty of obstructing the police

officers in the lawful performance of their duties. *Id.* at 445–46, 901 *A.2d* 924.

Crawley contended that he could not be convicted of obstruction for disobeying the officer's command on the ground that the investigatory stop was not supported by reasonable and articulable suspicion. *Id.* at 449, 901 *A.2d* 924.[6] We rejected that argument, holding that regardless of whether the officers had the constitutionally mandated level of suspicion to justify the stop, Crawley's obstruction of the officers in the performance of their duties violated *N.J.S.A.* 2C:29–1. *Id.* at 451–52, 901 *A.2d* 924.

It was clear to us that, in enacting *N.J.S.A.* 2C:29–1, the Legislature "did not intend that a person involved in a police encounter should have an incentive to flee or resist, thus endangering himself, the police, and the innocent public." *Id.* at 451, 901 *A.2d* 924. We determined that "when a police officer is acting in good faith and under color of his authority, a person must obey the officer's order to stop and may not take flight without violating *N.J.S.A.* 2C:29–1." *Id.* at 451–52, 901 *A.2d* 924.

In *Crawley*, which was decided after the appellate panel's decision in this case, we explicitly disapproved of the panel's statement that " 'a citizen's non-violent flight from an [unconstitutional] search and seizure cannot be validly criminalized' under *N.J.S.A.* 2C:29–1." *Id.* at 460 n. 7, 901 *A.2d* 924 (quoting *Williams, supra,* 381 *N.J.Super.* at 577, 887 *A.2d* 190). We rejected that notion, explaining that "any flight from police detention is fraught with the potential for violence because flight will incite a pursuit, which in turn will endanger the suspect, the police, and innocent bystanders." *Ibid.* Cases abound in which a suspect's "flight from the police set in motion an ensuing chase

---

[6] The State apparently lost the glassine envelopes of drugs, and therefore the defendant had no need to move to suppress evidence seized during his arrest for obstruction. *Id.* at 445, 447, 199 *A.2d* 809. We did not have occasion to address whether the intervening act of obstruction by the defendant broke the chain or purged the taint of the arguably unlawful investigatory stop.

that resulted in death or serious injury either to a police officer, a suspect, or a bystander." *Id.* at 455 n. 6, 901 *A.*2d 924. For practical and public-policy-based reasons, "constitutional decision-making cannot be left to a suspect in the street," even one who has done no wrong; a suspect "cannot be the judge of his own cause and take matters into his own hands and resist or take flight." *Id.* at 459, 901 *A.*2d 924. This reasoned approach encourages persons to avail themselves of judicial remedies, and signals that if a person peaceably submits to an unconstitutional stop the result will be suppression of the evidence seized from him. *Id.* at 459–60, 901 *A.*2d 924.

Applying those principles to the present case, we first note that the police officers had probable cause to believe that defendant had violated the obstruction statute by his physical resistance and flight. Moreover, as a basic precondition for prosecution under the obstruction statute, the police officers were acting in good faith and under color of their authority. As we observed in *Crawley*, "[a] police officer who *reasonably* relies on information from headquarters in responding to an emergency or public safety threat may be said to be acting in good faith under the [obstruction] statute." *Id.* at 461 n. 8, 901 *A.*2d 924. Here, Officer McRae and his partner were responding to a dispatch from headquarters that reported potential narcotics-dealing activity in a high-crime area, where drug dealers were commonly known to carry weapons. The officers approached defendant, who matched the description given in the dispatch. Although the investigatory stop was unconstitutional, we cannot conclude that the officers "without any basis arbitrarily detain[ed] a person on the street," which, if true, would have taken this case outside of the purview of the obstruction statute. *Ibid.*

Because the officers had probable cause to arrest defendant for obstruction, ordinarily the handgun seized incident to a lawful arrest would be admissible in evidence. *See State v. Eckel,* 185 *N.J.* 523, 528–37, 888 *A.*2d 1266 (2006) (noting search incident to lawful arrest is well-recognized exception to warrant requirement).

However, defendant claims that the taint from the earlier unconstitutional stop was not extinguished by the lawful obstruction arrest. We therefore now turn to whether the handgun was properly admitted into evidence by the trial court or properly suppressed by the Appellate Division. The answer to that question depends on the purpose and principles undergirding the exclusionary rule.

## V.

### A.

The exclusionary rule "is a judicially created remedy designed to safeguard" the right of the people to be to be free from "unreasonable searches and seizures." *United States v. Calandra*, 414 *U.S.* 338, 348, 94 *S.Ct.* 613, 620, 38 *L.Ed.*2d 561, 571 (1974); *see also State v. Lee*, 190 *N.J.* 270, 277, 920 *A.*2d 80 (2007). Under the exclusionary rule, "the State is barred from introducing into evidence the 'fruits' of an unlawful search or seizure by the police." *State v. Badessa*, 185 *N.J.* 303, 311, 885 *A.*2d 430 (2005) (citing *Wong Sun v. United States*, 371 *U.S.* 471, 485, 83 *S.Ct.* 407, 416, 9 *L.Ed.*2d 441, 454 (1963)). The overarching purpose of the rule is to deter the police from engaging in constitutional violations by denying the prosecution any profit from illicitly-obtained evidence. *Id.* at 310, 885 *A.*2d 430; *State v. Evers*, 175 *N.J.* 355, 376, 815 *A.*2d 432 (2003). A corollary purpose is to uphold judicial integrity by serving notice that our courts will not provide a forum for evidence procured by unconstitutional means. *See Lee, supra*, 190 *N.J.* at 278, 920 *A.*2d 80; *Badessa, supra*, 185 *N.J.* at 311, 885 *A.*2d 430. Suppressing evidence sends the strongest possible message that constitutional misconduct will not be tolerated and therefore is intended to encourage fidelity to the law.

Countering that laudable policy, however, is the recognition that the exclusionary rule exacts a high price on society by depriving the jury or judge of reliable evidence that may point the way to the truth. *United States v. Janis*, 428 *U.S.* 433, 448–49, 96 *S.Ct.*

3021, 3029, 49 *L.Ed.*2d 1046, 1058 (1976); *State v. Barry*, 86 *N.J.* 80, 87, 429 *A.*2d 581 (1981). Excluding reliable evidence may vindicate the Fourth Amendment rights of a particular defendant, and more generally the privacy rights of all persons, but it also may result in the guilty going free.

Because of those competing concerns, the exclusionary rule is applied to those circumstances where its remedial objectives can best be achieved. *Calandra, supra,* 414 *U.S.* at 348, 94 *S.Ct.* at 620, 38 *L.Ed.*2d at 571. For example, "the exclusionary rule will not apply when the connection between the unconstitutional police action and the evidence becomes so attenuated as to dissipate the taint from the unlawful conduct." *Badessa, supra,* 185 *N.J.* at 311, 885 *A.*2d 430 (citations and internal quotation marks omitted); *see also Lee, supra,* 190 *N.J.* at 278, 920 *A.*2d 80 (explaining attenuation doctrine); Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.4(a), at 234–35 (3d ed.1996) (same). "In those circumstances, withholding from the finder of fact relevant evidence far removed from the constitutional breach is a cost not justified by the exclusionary rule." *Badessa, supra,* 185 *N.J.* at 311, 885 *A.*2d 430. Under both federal and state law, "the critical determination is whether the authorities have obtained the evidence by means that are sufficiently independent to dissipate the taint of their illegal conduct." *State v. Johnson,* 118 *N.J.* 639, 653, 573 *A.*2d 909 (1990).

In evaluating whether evidence is sufficiently attenuated from the taint of a constitutional violation, we look to three factors: "(1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct." *Ibid.; accord Brown v. Illinois,* 422 *U.S.* 590, 603–04, 95 *S.Ct.* 2254, 2261–62, 45 *L.Ed.*2d 416, 427 (1975).

## B.

We now apply those criteria to this case. Although the first factor—the closeness in time between the unconstitutional investi-

gatory stop and the seizure of the handgun—favors defendant, it is substantially outweighed by the other two factors. *State v. Worlock*, 117 *N.J.* 596, 622–23, 569 *A.*2d 1314 (1990) (observing that temporal proximity "is the least determinative" factor). With regard to the third factor, it bears repeating that even though the officers may have acted mistakenly, they did so in good faith. Accordingly, their actions could hardly be described as flagrant misconduct. It is the second factor—the presence of intervening circumstances—that is determinative here. *Johnson, supra,* 118 *N.J.* at 656, 573 *A.*2d 909 ("The second factor, intervening events, 'can be the most important factor in determining whether [evidence] is tainted.'" (quoting *Worlock, supra,* 117 *N.J.* at 623, 569 *A.*2d 1314) (alteration in original)).

Courts of this State have held that eluding the police and resisting arrest in response to an unconstitutional stop or pat down constitute intervening acts and that evidence seized incident to those intervening criminal acts will not be subject to suppression. *See State v. Seymour,* 289 *N.J.Super.* 80, 86–87, 672 *A.*2d 1273 (App.Div.1996); *Casimono, supra,* 250 *N.J.Super.* at 182–85, 593 *A.*2d 827. In *Seymour, supra,* the court maintained that a defendant's eluding the police at high speeds, thereby endangering the public, was a sufficient intervening act to purge the taint from the police's earlier attempt to stop his car—even if that attempt did not meet the standard of reasonable and articulable suspicion. 289 *N.J.Super.* at 84, 86–87, 672 *A.*2d 1273. In *Casimono, supra,* the court concluded that even though the police attempted a pat down based on less than the constitutionally-requisite suspicion, the defendants' physical resistance was an intervening act that marked "the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost." 250 *N.J.Super.* at 184–88, 593 *A.*2d 827 (citation and internal quotation marks omitted).

Courts from other jurisdictions have applied the attenuation doctrine in similar circumstances. *See, e.g., United States v.*

*Bailey,* 691 *F.*2d 1009, 1017–18 (11th Cir.1982) ("[P]olice may legally arrest a defendant for a new, distinct crime, even if the new crime, is in response to police misconduct and causally connected thereto.  If the police lawfully have arrested a suspect, then they may properly conduct [a search incident to a lawful arrest]." (footnote omitted)); *Commonwealth v. King,* 389 *Mass.* 233, 449 *N.E.*2d 1217, 1225 (1983) ("[If] the driver had not attacked the investigating troopers, the evidence would be inadmissible as fruit of the poisonous tree.  What distinguishes this case ... is the ... independent and intervening action of attacking the troopers.  These acts broke the chain of causation and dissipated the taint of the prior illegality.").

The point to all of those cases is that the law should *deter* and give no incentive to suspects who would endanger the police and themselves by not submitting to official authority.  As we stated in *Crawley, supra,* "[a] person has no constitutional right to use an improper stop as justification to commit the new and distinct offense of resisting arrest, eluding, escape, or obstruction, thus precipitating a dangerous chase that could have deadly consequences." 187 *N.J.* at 459, 901 *A.*2d 924.  Had defendant merely stood his ground and resorted to the court for his constitutional remedy, then the unlawful stop would have led to the suppression of the handgun.  *See id.* at 460, 901 *A.*2d 924.

Our approach balances both the right of the people to be free from unreasonable searches and seizures and their right to be free from the dangers created by suspects who physically resist the police, and provides sufficient disincentives to deter both police misconduct and criminal misconduct by suspects.  The exclusionary rule will continue as a deterrent to law enforcement officers who violate the Fourth Amendment and Article 1, Paragraph 7.  Based on our ruling, it would be farfetched to believe that police officers will attempt suspicionless investigatory stops or pat downs—to which the exclusionary rule applies—in the hope that a suspect will commit an independent crime that will be the basis for a lawful search.

Defendant's resistance to the pat down and flight from the police in this case was an intervening act—the crime of obstruction—that completely purged the taint from the unconstitutional investigatory stop. Therefore, Officer McRae and his partner seized the handgun incident to a lawful arrest and the evidence was properly admitted into evidence at trial.

## VI.

For those reasons, we reverse the Appellate Division, which ordered suppression of the handgun, and reinstate defendant's judgments of conviction. We remand to the panel for consideration of those arguments raised by defendant on direct appeal that were not addressed in the panel's opinion.

Justice WALLACE, JR., concurring.

I concur in the result. I continue to adhere to my dissent in *State v. Crawley*, 187 *N.J.* 440, 468, 901 *A.2d* 924 (2006), that when the police lack sufficient reliable information to conduct a valid investigatory stop, but could have conducted a field inquiry, a defendant's departure from the police encounter may not form the basis of a violation of the obstruction statute. In the present case, however, once defendant pushed the police officer, the police had probable cause to arrest and search defendant. Accordingly, I concur.

*For reversal/reinstatement/remandment*—Chief Justice ZAZZALI and Justices LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO, and HOENS—6.

*Opposed*—None.