JUSTICE ALBIN, dissenting.
**455 I concur with the majority that four officers of the Willingboro Police Department unlawfully entered the home of defendant's family in violation of the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution. However, I disagree with the majority's conclusion that the cell phone retrieved from the home was not the product of unconstitutional police conduct subject to the exclusionary rule.
During their unlawful presence in defendant's home, the officers swept through various rooms, confronted defendant's sister who had just awakened, located and arrested defendant for the alleged robbery of a cell phone, and seized evidence. The police then remained unlawfully on the *279 premises until defendant's mother, stepfather, and brother returned. The three family members found their home occupied by the police and the seventeen-year-old defendant in handcuffs seated on a couch in the living room. The mother, stepfather, and brother did not know that the police had unlawfully broken into their home and had no right to be there.
An officer explained to the family members that they were investigating the theft of a cell phone by defendant. When asked by the brother whether they had found it, the officer answered, "nope." In response to the surreal situation he encountered, the brother offered to look for the cell phone-and did so while shadowed by an officer. He discovered the phone in another brother's room and gave it to the officer.
I cannot conclude, as the majority does, that the brother's act of recovering the cell phone was independent of or sufficiently attenuated from the unconstitutional police presence in his home. The State failed to show that the unlawful police occupation of the **456 family home did not heavily influence the brother's decision to fetch the phone and that, absent the unlawful police presence, the brother would have volunteered to look for the phone.
Because there was no break in the causative chain between the officers' unconstitutional presence in the home and the ultimate discovery of the cell phone, evidence of the phone should have been suppressed. I therefore respectfully dissent.
I.
A.
The Fourth Amendment and Article I, Paragraph 7 of our State Constitution are intended to protect the home from "unreasonable searches and seizures" by the police. State v. Brown, 216 N.J. 508, 526, 83 A.3d 45 (2014). The home is the singular place where the privacy interests of people are most profound. Ibid."Indeed, 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " State v. Vargas, 213 N.J. 301, 313, 63 A.3d 175 (2013) (quoting United States v. U.S. Dist. Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) ).
"The exclusionary rule 'is a judicially created remedy designed to safeguard' the right of the people to be free from 'unreasonable searches and seizures.' " State v. Williams, 192 N.J. 1, 14, 926 A.2d 340 (2007) (quoting United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ). The rule requires the suppression of evidence secured through the violation of constitutional rights. Id. at 16-17, 926 A.2d 340. It is intended " 'to deter future unlawful police conduct' by denying the prosecution the spoils of constitutional violations," State v. Badessa, 185 N.J. 303, 310, 885 A.2d 430 (2005) (quoting State v. Evers, 175 N.J. 355, 376, 815 A.2d 432 (2003) ), and "to uphold judicial integrity by serving notice that our courts will not provide a forum for evidence procured by unconstitutional means," State v. Shaw, 213 N.J. 398, 413-14, 64 A.3d 499 (2012) (quoting **457 Williams, 192 N.J. at 14, 926 A.2d 340 ). At its core, the exclusionary rule ensures that "the Fourth Amendment is not reduced to 'a form of words.' " Evers, 175 N.J. at 376, 815 A.2d 432 (quoting Mapp v. Ohio, 367 U.S. 643, 648, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) ).
An exception to the exclusionary rule is the attenuation doctrine. Shaw, 213 N.J. at 414, 64 A.3d 499. If the seizure of evidence is so attenuated from unconstitutional police conduct that the taint from the unlawful conduct is sufficiently purged, the exclusionary rule will not apply. Ibid. The State bears the burden of proving attenuation.
*280 Brown v. Illinois, 422 U.S. 590, 604, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). To determine whether seized evidence is sufficiently attenuated from police misconduct to justify not invoking the exclusionary rule, we look to three factors: "(1) 'the temporal proximity' between the illegal conduct and the challenged evidence; (2) 'the presence of intervening circumstances'; and (3) 'particularly, the purpose and flagrancy of the official misconduct.' " Shaw, 213 N.J. at 415, 64 A.3d 499 (quoting Brown, 422 U.S. at 602-04, 95 S.Ct. 2254 ).
In State v. Smith, a case comparable to the present one, we applied the Brown factors and rejected the attenuation doctrine as a basis for upholding the search of a home. 155 N.J. 83, 100-01, 713 A.2d 1033 (1998). There, based on an informant's unreliable tip, the police unconstitutionally detained the defendant on suspicion of drug dealing and seized from him the keys to his apartment, where he lived with his sister. Id. at 88-90, 101, 713 A.2d 1033. The police learned that no one was in the apartment and that the defendant's sister was hospitalized. Id. at 89, 713 A.2d 1033. The police called and advised the sister that they had the apartment keys and secured her consent to enter and search the apartment. Id. at 89-90, 101, 713 A.2d 1033. Using the keys unlawfully seized from the defendant, the police entered the apartment and discovered drugs-the evidence used to bring criminal charges issued against him. Id. at 90, 713 A.2d 1033.
Applying the Brown factors, we held that "the discovery of the drugs was a product of the unlawful seizure of the keys," despite **458 the sister's consent, and suppressed the evidence. Id. at 100-01, 713 A.2d 1033. We reasoned that although the sister's consent could not "be ascribed to a single reason or motive, it is clear that it was heavily influenced by the unlawful seizure of the keys from defendant." Id. at 101, 713 A.2d 1033 (emphasis added). Accordingly, the sister's "consent was not an independent intervening circumstance" breaking the chain of causation stemming from the unlawful seizure of the defendant's keys. Ibid.; see also United States v. Damrah, 322 F.Supp.2d 892, 901 (N.D. Ohio 2004) (suppressing evidence found in defendant's home because wife's consent to search was not intervening circumstance that "purged the taint of the agents' unlawful presence" in defendant's home).
B.
Applying those principles to the facts of this case leads to the ineluctable conclusion that the police misconduct is directly linked to the discovery of the cell phone, which therefore must be suppressed. Importantly, the State had the burden of proving attenuation-a point ignored by the majority-and failed to do so.
First, there was no temporal break between the officers' unconstitutional entry and presence in the home and the brother's search for the phone. When the brother arrived, the police officers had already unconstitutionally entered and occupied the home, conducted a sweep, gathered incriminating evidence (the cell phone case and defendant's camouflage shorts), and handcuffed defendant, who was seated on the living room couch. As soon as the brother and his parents came home, the officers stated that they were investigating the alleged theft of a cell phone by defendant. The brother asked an officer whether the police had found the cell phone, and the officer responded, no. Apparently, the brother believed the police had conducted an initial search. He had no way of knowing at the time that the four police officers were unlawfully on the premises.
Second, the State was required to prove that the constitutional violation of the family's *281 home "did not lead to or significantly **459 influence" the brother's actions. See Smith, 155 N.J. at 101, 713 A.2d 1033. Whatever displeasure the brother might have expressed about defendant to the officers, his offer to find the cell phone cannot be disentangled from the presence of the officers as an occupying force in his family's home. The State did not show that the unconstitutional presence of the officers did not "heavily influence[ ]" the brother's decision to cooperate-or at least was not one motive to do so. See ibid. It would hardly be surprising that the brother would want to hasten the departure of the police from his parent's home. The State did not show that the brother's action was voluntary, an act of unconstrained free will, given that the officers appeared unlikely to leave until they accomplished their mission. Would the brother have looked for incriminating evidence to damn his seventeen-year-old sibling in the absence of the unconstitutional police presence in his parent's home? Not likely. Cast in that light, there are no true intervening circumstances breaking the unconstitutional chain of causation.
Third, the officers' entry and occupation of the home was a flagrant violation of the family's-not just defendant's-constitutional rights under our Federal and State Constitutions. Without the justification of exigent circumstances, officers entered through a house window, went from room to room, surprised defendant's recently awakened sister, took defendant into custody, and gathered evidence. The exclusionary rule, if nothing else, is directed at deterring the police from unlawfully entering the sanctity of the home and exploiting their unconstitutional conduct, as occurred in this case.
II.
In conclusion, the State failed to carry the burden of proving that the police misconduct did not significantly influence the brother's decision to search for the cell phone. Because the taint from the unconstitutional police occupation of defendant's home was not purged by the brother's cooperation with the police, the ultimate seizure of the phone by the police violated both the **460 Fourth Amendment and Article I, Paragraph 7 of our State Constitution. Unlike the majority, I would apply the exclusionary rule to this flagrant violation of the right of a family to be secure in their home from unreasonable searches and seizures.
I therefore respectfully dissent.