**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2978-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMES L. BELLAMY,

    Defendant-Appellant.

_____

        Submitted March 13, 2018 — Decided June 12, 2018

        Before Judges Carroll and DeAlmeida.

        On appeal from Superior Court of New Jersey,
        Law Division, Mercer County, Indictment No.
        15-08-0935.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Stefan Van Jura, Deputy Public
        Defender, of counsel and on the brief).

        Gurbir S. Grewal, Attorney General, attorney
        for respondent (Sarah Lichter, Deputy Attorney
        General, of counsel and on the brief).

PER CURIAM

    Defendant appeals a trial court order denying his motion to

suppress a gun found in his possession during a warrantless arrest.

We affirm.

I.

The following facts were adduced at the suppression hearing. On May 7, 2014, at around 11:40 p.m., Trenton Police Department Detective Jeffrey Donaire, an eight-year veteran, and his partner were notified by dispatch that the ShotSpotter gunshot detection system had detected a single gunshot in the area of 413 Walnut Avenue. That location is a high-crime area where numerous shootings and homicides occur each year. Detective Donaire has been involved in approximately 50 arrests, 100 investigations, and 50 firearms incidents in the area. The detective is familiar with the ShotSpotter system, and has never known it to falsely indicate that a gunshot had been fired.

The officers, dressed in full uniforms, including vests marked "Police" on front and back, arrived at the address in an unmarked police car within one or two minutes.[1] They observed only one person, later identified as defendant, in the area. As they drove slowly toward him, defendant was walking away at a quick pace, crossing the street, and "looking in every direction in a nervous manner." The officers decided to stop defendant to determine if he witnessed or was involved in the shooting, as he was the only person in the vicinity of the reported gunshot.

---

[1] The trial court found the officers' unmarked car would have been readily recognizable as a police vehicle because it had un-tinted windows, a cage separating the front and back seats, and visible police lights affixed to the front grill and bumper.

A-2978-16T2

When Detective Donaire was within 10 feet of defendant, he turned, looked directly at the officer, and ducked down between two parked cars. The detective shined a flashlight on defendant and saw him grasp an object in the middle of his waistband, which he moved to the right, and shoved further into his pants. Based on his training and experience, and the high-crime area, the detective believed defendant was securing a weapon in his waistband. The detective exited the vehicle, and ordered defendant to stop and approach him. In response, defendant turned, looked up and down the street, and ran away. Detective Donaire ordered defendant to stop. When he failed to comply, the officers began a foot pursuit.

Defendant ran into a nearby home. The detective caught up with defendant, and again ordered him to stop. When defendant failed to comply, the officers entered the home, and tackled defendant in the hallway. The force of the tackle caused an orange and black flare gun, fitted with a pipe, and loaded with a .410mm shotgun shell, to fall from defendant's waistband. Detective Donaire arrested defendant. The owner of the home later told police that defendant did not live at the residence, and did not have permission to enter the house.

On August 6, 2015, a Mercer County grand jury indicted defendant, charging him with: (1) second-degree burglary, N.J.S.A.

2C:18-2a(1); (2) second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b; (3) fourth-degree resisting arrest, N.J.S.A. 2C:29-2a(2); and (4) second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7b.

Defendant moved to supress the weapon. The trial court denied the motion. The judge, having found Detective Donaire's testimony to be credible, concluded that the officers had "reasonable and particularlized suspicion to initiate an investigative detention" based on defendant's

> nervous manner, his crouching between cars upon seeing the police in what Donaire believed to be an attempt to hide, [his] shifting an object in his waistband, and being the only person in the high crime area which was the location of a shots fired call received just minutes earlier . . . .

Following the denial of his motion, defendant entered a guilty plea to second-degree unlawful possession of a handgun in exchange for dismissal of the remaining counts. The trial court sentenced defendant to five years of imprisonment with a three-and-a-half-year period of parole ineligibility under the Graves Act, N.J.S.A. 2C:43-6c.

This appeal followed. Defendant raises one point for our consideration:

> THE GUN SHOULD BE SUPPRESSED BECAUSE THE STATE'S FAILURE TO PRODUCE ANY EVIDENCE ON THE RELIABILITY OF THE SHOTSPOTTER GUNSHOT

4

DETECTION SYSTEM PRECLUDES A FINDING THAT DEFENDANT WAS LAWFULLY SEIZED. MOREOVER, THE STATE FAILED TO ESTABLISH A SIGNIFICANT ATTENUATION BETWEEN THE UNCONSTITUTIONAL STOP OF DEFENDANT AND THE SEIZURE OF THE GUN HE DISCARDED FOLLOWING THAT STOP. STATE V. WILLIAMS, 410 N.J. SUPER. 540 (APP. DIV. 2009).

## II.

The Fourth Amendment of the United States Constitution, and Article I, Paragraph 7 of the New Jersey Constitution, both protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "Under our constitutional jurisprudence, when it is practicable to do so, the police are generally required to secure a warrant before conducting a search . . . ." State v. Hathaway, 222 N.J. 453, 468 (2015) (citations omitted).

It is well settled that police officers may lawfully detain someone to conduct an investigatory stop without a warrant and on less than probable cause. Terry v. Ohio, 392 U.S. 1, 22 (1968); State v. Stovall, 170 N.J. 346, 356 (2002). An investigatory stop allows an officer to detain an individual temporarily for questioning if the officer can articulate "some minimum level of objective justification" based on "something more" than an "inchoate and unparticularized suspicion or hunch" of wrongdoing.

United States v. Sokolow, 490 U.S. 1, 7 (1989) (citations and internal quotations omitted); accord State v. Nishina, 175 N.J. 502, 511 (2003).

A warrantless investigative stop is valid when an "officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot . . . ." Terry, 392 U.S. at 30 (Harlan, J., concurring). The stop must be "'based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity.'" State v. Pineiro, 181 N.J. 13, 20 (2004) (quoting Nishina, 175 N.J. at 511 (citation and internal quotation marks omitted)). Reasonable suspicion "involves a significantly lower degree of objective evidentiary justification than does the probable cause test . . . ." State v. Davis, 104 N.J. 490, 501 (1986).

A reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing" by the detained individual. United States v. Arvizu, 534 U.S. 266, 273 (2002). "In evaluating the facts giving rise to the officer's suspicion of criminal activity, courts are to give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts

objectively and reasonably viewed in light of the officer's expertise.'" State v. Richards, 351 N.J. Super. 289, 299 (App. Div. 2002) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

In addition, we "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (quotations omitted). This is especially true when the trial court findings are "substantially influenced by [its] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). The trial court's legal conclusions are entitled to no special deference, and are reviewed de novo. State v. Gandhi, 201 N.J. 161, 176 (2010).

We are satisfied that the trial court's findings of fact are supported by sufficient credible evidence and its denial of defendant's suppression motion was sound. The officers were lawfully in the area where a few minutes earlier an electronic detection system identified a gunshot. Defendant was the only person in the vicinity of the reported gunfire. "Although a stop in a high-crime area does not by itself justify a Terry frisk . . . the location of the investigatory stop can reasonably elevate a police officer's suspicion that a suspect is armed." State v.

<u>Valentine</u>, 134 N.J. 536, 547 (1994) (citing <u>Maryland v. Buie</u>, 494 U.S. 325, 334-35 n. 2 (1990)).

Furthermore, on seeing the officers, defendant crouched between two parked cars in an attempt to avoid detection. Detective Donaire observed defendant grab an object in his waistband, and force that object further into his pants. At that point, in light of the report of gunfire, the high-crime location, the furtive acts of defendant, and the observation of an object in defendant's waistband, Detective Donaire had a reasonable suspicion of criminal activity based on specific and articulable facts. The attempt to detain defendant for an investigatory stop was lawful.[2]

The detective's level of suspicion was objectively heightened when defendant fled from the officers. "Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124 (1999); <u>Pineiro</u>, 181 N.J. at 26. "[W]hen a police officer is acting in good faith and under color of his authority, a person must obey the officer's order to stop and may not take flight without violating N.J.S.A. 2C:29-1

---

[2] Because we hold that the officers' investigative stop of defendant was constitutionally sound, we need not reach defendant's attenuation argument.

A-2978-16T2

[obstructing administration of law or other governmental function]." State v. Crawley, 187 N.J. 440, 451-52 (2006); accord State v. Williams, 192 N.J. 1 (2007). Defendant's flight, after his attempt to avoid detection, and his secreting of an object in the waistband of his pants, was sufficient to justify the officers' pursuit of defendant, and his ultimate arrest. A lawful arrest automatically justifies a warrantless search of the arrestee and the area within the arrestee's reach. Chimel v. California, 395 U.S. 752 (1969); see also United States v. Edwards, 415 U.S. 800 (1974). Seizure of the gun in defendant's possession at the time of his arrest was, therefore, also lawful.

We are not persuaded by defendant's argument that a lack of expert testimony regarding the reliability of the ShotSpotter technology renders the detective's reliance on the system's report of a gunshot unreasonable. Detective Donaire was familiar with the ShotSpotter system. He explained that it "identifies and pinpoints gunfire in the city, and then . . . the dispatchers monitor this and they put it out for patrol units to respond to the area." He has never responded to a ShotSpotter report of gunfire that was proven inaccurate. The system is, in effect, the equivalent of a reliable informant, and, as the trial court pointed out, is objectively more reliable than an anonymous report of gunfire. At any rate, it was not the ShotSpotter report alone

that formed the basis of the officers' decision to stop defendant. As explained above, defendant's suspicious behavior in a high-crime area contributed to the officers' decision to conduct an investigative stop.[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] We do not agree with defendant's argument that Detective Donaire's testimony about the ShotSpotter system was inadmissible expert testimony. The detective provided factual testimony with respect to his understanding of the purpose of the system and his experience with responding to reports of gunfire detected by the system. At most, the detective provided lay opinion testimony with respect to the reliability of the ShotSpotter system. N.J.R.E. 701.

A-2978-16T2