**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3303-18T2

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

DELSHON J. TAYLOR,

     Defendant-Respondent.

_____

Submitted July 9, 2019 – Decided August 28, 2019

Before Judges Hoffman and Currier.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 18-07-0257.

John T. Lenahan, Salem County Prosecutor, attorney for appellant (David M. Galemba, Assistant Prosecutor, of counsel and on the briefs).

Joseph E. Krakora, Public Defender, attorney for respondent (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

By leave granted, the State appeals from a February 11, 2019 order granting defendant's motion for reconsideration, resulting in the court granting defendant's motion to suppress evidence. Following our review of the record presented to us, we summarily remand this matter to the Law Division for further consideration based on State v. Williams, 192 N.J. 1 (2007).

I

We discern the following facts from the initial hearing on defendant's motion to suppress. While on patrol on November 15, 2017, shortly after 9:00 p.m., Sgt. Carmen Hernandez of the Penns Grove Police Department heard a radio report of "shots fired" from Officer Travis Paul, who was on patrol in a local apartment complex. Officer Paul left the complex and drove onto South Broad Street, in the direction where he heard the shots. Sgt. Hernandez drove toward the complex from the other direction on South Broad Street, and within one to five minutes of the radio report, she approached three males walking at a location "about two blocks" from the complex. Sgt. Hernandez testified "hardly anybody was in the area" other than these individuals, so she approached them in response to the shots fired.

Viewing the video from Sgt. Hernandez's body-worn camera, the Law Division judge observed "that as soon as [Sgt.] Hernandez began approaching

the three men she said, 'Wait a minute. Don't leave yet.' She then detained the men until back-up arrived, explaining that shots were fired 'close to this area.'" The judge then found that when Officer Paul arrived, he

> exited his vehicle [and] saw . . . defendant attempting to walk away. The officer told him "I have to pat you down." . . . [D]efendant continued pacing and then took off running. Officer Paul and Officer Haslett, who had also arrived on location, pursued him. Officer Paul observed . . . defendant reach into his waistband and throw a gun to the ground. He apprehended . . . defendant, and the gun was located and seized.

A grand jury indicted defendant, charging him with two counts of possession of a weapon, N.J.S.A. 2C:39-4a(1) and N.J.S.A. 2C:28-6(1), one count of obstruction, N.J.S.A. 2C:29-1a, and one count of tampering with physical evidence, N.J.S.A. 2C:28-6(1). Defendant filed a motion to suppress the evidence seized, arguing it was recovered subsequent to an unlawful investigatory stop.

On November 2, 2018, the Law Division issued a written opinion denying defendant's motion to suppress. Since Sgt. Hernandez told the individuals to remain until her backup arrived, the judge found they "reasonably perceived they were not free to leave," and thus were subject to "an investigative detention." However, considering "the totality of the circumstances to determine whether reasonable suspicion existed," and giving "due weight to all inferences which

3

can be made from the specific and articulable facts present at the time of the detention," (citing State v. Pineiro, 181 N.J. 13, 25-27 (2004)), the judge found "there was a reasonable and articulable suspicion that one or more of these men had engaged in or been part of the shots fired incident[,] and thus an investigative detention was warranted." The judge determined that Officer Paul's attempted pat-down was warranted, and concluded "that the action by the police in this case was not unlawful."

Lastly, the judge observed:

> [R]egardless of the ultimate determination as to the legality of the [Terry[1]] stop, the New Jersey Supreme Court has determined that a person must submit to a stop by police regardless of the lawfulness of the stop because the resistance and fleeing puts officers and the public at risk. State v. Crawley, 187 N.J. 440 (2006). The proper way to challenge a stop is in court. By fleeing the scene, defendant committed the offense of obstructing the administration of law. He discarded the weapon while in the course of committing that offense, not during the course of the investigative determination. Therefore, the weapon was lawfully recovered.

Defendant filed a motion for the Law Division to reconsider its denial of defendant's original motion to suppress the evidence seized. After the parties submitted briefs and orally argued, the judge granted defendant's motion for

---

[1]  Terry v. Ohio, 392 U.S. 1 (1968).

A-3303-18T2

reconsideration, resulting in the grant of "[d]efendant's motion to suppress evidence, namely the handgun."

The judge issued a written opinion in support of her decision to grant the motion for reconsideration. The judge stated that in his motion for reconsideration,

> defense counsel argued that the court had relied on observations and circumstances that occurred after the men were detained to support the conclusion that the detention was lawful. . . . He further argued that at the moment [Sgt.] Hernandez ordered . . . defendant to wait, she had no basis to justify . . . defendant's detention. . . . I cannot disagree with defense counsel's assessment after further review of the testimony.

Since she "clearly had instructed them not to leave" immediately upon approaching the individuals, the judge found Sgt. Hernandez "did not have a reasonable and particularized suspicion that any of these men had just engaged in or was about to engage in criminal activity."

The judge then addressed the State's argument that Crawley "requires denial of the motion to suppress notwithstanding the fact that the investigatory stop was unlawful." The judge framed the issue in Crawley as "whether a suspect can be convicted of the offense of obstruction under N.J.S.A. 2C:29-1 if he flees the scene of an investigatory stop later found to be unconstitutional." The judge observed the Supreme Court "emphasized the fact that an individual

5

may not flee from police who are acting in good faith and under color of their authority." See Crawley, 187 N.J. at 460-61 n.8. The judge then quoted the Court's discussion of good faith:

> Among other things, good faith means "honesty in belief or purpose" and "faithfulness to one's duty or obligation." A police officer who reasonably relies on information from headquarters in responding to an emergency or public safety threat may be said to be acting in good faith under the statute. However, a police officer who without any basis arbitrarily detains a person on the street would not be acting in good faith. [. . .] [Good] faith is an objective, not a subjective, standard.
>
> [(quoting Ibid. (citation omitted) (second alteration in original))]

Applying the facts to this definition, the judge found

> the complete absence of articulated facts to support [Sgt.] Hernandez'[s] decision to subject . . . defendant to an investigatory stop[,] indicat[ing] that she arbitrarily detained . . . defendant. The mere fact that shots were fired somewhere in the community does not authorize police officers to stop and detain every individual they encounter. Yet there is no question that . . . defendant was detained by [Sgt.] Hernandez simply because another officer heard shots fired somewhere in Penns Grove. . . .
>
> The Crawley decision does not stand for the proposition that the police may order anyone to stop without a reasonable articulable suspicion for doing so. The circumstances presented here are so devoid of any basis to conclude that an investigatory stop was

6

warranted that the court declines to find that . . . defendant's flight from police is sufficient to overcome the constitutional deficiencies of the detention.

II

Police encounters with individuals generally occur at three distinct levels: a field inquiry; an investigatory stop; and/or an arrest. State v. Nishina, 175 N.J. 502, 510-11 (2003). There are constitutional considerations at all levels of encounters. Ibid.

An investigative stop, often referred to as a Terry stop-and-frisk, does not require probable cause to believe a person has committed or is about to commit an offense. Id. at 510. Rather, "[a] police officer may conduct an investigatory stop if, based on the totality of the circumstances, the officer ha[s] a reasonable and particularized suspicion to believe that an individual has just engaged in, or was about to engage in, criminal activity." State v. Stovall, 170 N.J. 346, 356 (2002) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)).

We presume the investigatory stop in this case was unconstitutional. See Williams, 192 N.J. at 10. Our reason for ordering a remand is that the judge's decision on whether to deny the motion to suppress notwithstanding the unlawful stop was guided entirely by Crawley, when Williams applies more directly to the facts of this case. As the Court explained in Williams:

In . . . Crawley, . . . we determined that a defendant commits the crime of obstruction if he disobeys a police command and flees from an investigatory stop--even an unconstitutional one. In this appeal, we must decide whether [the] defendant who resisted and fled from a presumed unconstitutional investigatory stop and who was later arrested for obstruction is entitled to suppression of the handgun seized incident to his lawful arrest.

[Williams, 192 N.J. at 4.]

By focusing on the admissibility of the handgun as opposed to the criminality of obstruction after an unlawful investigatory stop, we note that the Court in Williams additionally analyzed "whether [the] evidence [was] sufficiently attenuated from the taint of the constitutional violation . . . ." Id. at 15.

The Court then provided the following guidance for cases like the one under review:

In evaluating whether evidence is sufficiently attenuated from the taint of a constitutional violation, we look to three factors: "(1) the temporal proximity between the illegal conduct and the challenged evidence; (2) the presence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct."

[Id. at 28-29 (quoting State v. Johnson, 118 N.J. 639, 653 (1990)).]

A-3303-18T2

In granting reconsideration, the judge did not specifically address these three factors, and instead focused solely on "the constitutional deficiencies of the detention."

While fully explaining her reasons for concluding that Sgt. Hernandez lacked a basis for conducting "an investigatory stop," the judge did not reject her initial determination

> that the officer would have had a basis to make a field inquiry. Since "a field inquiry is voluntary and does not effect a seizure in constitutional terms, no particular suspicion of criminal activity is necessary on the part of an officer conducting such an inquiry." State v. Rosario, 229 N.J. 263, 272 (2017). In other words, Sgt. Hernandez certainly would have been justified in asking the men to talk to her about what they may have heard or seen.

Under the circumstances, we conclude that a remand for further consideration is appropriate, thereby allowing the motion judge to apply the three factors cited in Williams to the facts of this case. We imply no view as to what the judge should decide on remand, only that the judge's decision should fully address the factors identified in Williams.

Remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3303-18T2