**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4176-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAYSON MARQUEZ,

    Defendant-Appellant.

_____

Submitted February 3, 2021 – Decided April 5, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 18-07-1604.

Edward Crisonino, attorney for appellant.

Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jayson Marquez appeals from his May 6, 2019 judgment of conviction after a jury found him guilty of first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(l); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2); fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12-1(b)(4); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); and second-degree unlawful possession of a weapon by certain persons, N.J.S.A. 2C:39-7(b)(1). We affirm.

Defendant presents the following issues on appeal:

> POINT I.
> ADMISSION OF IRIS IRIZARRY'S STATEMENT AS SUBSTANTIVE EVIDENCE WAS IN ERROR.
>
> POINT II.
> THE TRIAL OF COUNT SEVEN WAS NOT PROPERLY CONDUCTED.
>
> POINT III.
> THE CUMULATIVE [E]FFECT OF THE ERRORS LED TO AN UNFAIR TRIAL AND THEREFORE, MERITS A REVERSAL.
>
> POINT IV.
> THE EXTENDED TERM IMPOSED IS NOT JUSTIFIED AND AGGRAVATING FACTORS ONE AND TWO ARE DOUBLE COUNTED GIVEN THE CONVICTION TO COUNT FOUR.

On the evening of April 13, 2018, Crystal Sheppard, Kenyetta Savior, his sister Shayla Savior, and Shaniece Williams, gathered outside the Ivy Hill apartment complex in Camden, listening to music, talking and drinking. Williams and Sheppard both lived at the complex. Iris Irizarry also lived at the apartment complex. Irizarry is the mother of two of defendant's children. Defendant visited Irizarry and his children regularly. Williams and Sheppard, with the group gathered outside, were also familiar with defendant.

That evening, defendant visited Irizarry and blocked in another vehicle when he parked his car. Later, someone trying to maneuver the blocked-in vehicle around defendant's car, struck and damaged Irizarry's parked car. Irizarry and defendant then confronted Kenyetta, and the others, outside. An argument ensued. After words were exchanged, Kenyetta wanted to fight but was physically restrained by his sister, Shayla. Defendant drew a gun and fired one shot, striking Kenyetta. Defendant then fired more shots, striking Kenyetta twice more. After being struck in the head, shoulder, and back, Kenyetta lay motionless in a pool of blood. Defendant quickly fled in his vehicle.

The first officer arriving at the scene dragged Kenyetta into his patrol car and rushed him to the emergency room. After undergoing emergency

3

surgery to remove part of his skull, he survived. Other officers secured the crime scene and began interviewing eyewitnesses, including Shayla, Williams, and Sheppard.

Detective Tyler Hagan arrived and interviewed Irizarry, surreptitiously recording the interview:

> HAGAN: Alright but now . . . who drove away in the white car . . . your boyfriend or child's father?
>
> IRIZARRY: In the white car?
>
> HAGAN: Uh-huh.
>
> IRIZARRY: It's my kids' father.

After Irizarry explained that her children were still asleep in an adjacent room, Hagan continued his questioning to obtain the suspect's name:

> HAGAN: [N]ow . . . what's your child's [sic] father's name?
>
> IRIZARRY: But what they need [sic] that for?
>
> HAGAN: Because we have to eliminate that no other kids are with him . . . as long as no other kids are with him . . . that's fine . . .
>
> IRIZARRY: No we don't have . . . (inaudible).
>
> HAGAN: I understand that but you have to look at it where I'm coming from . . . okay. . . .
>
> IRIZARRY: (Inaudible).

4

HAGAN: What . . . what's your child's [sic] father name that's all we have to do is make sure everything's okay . . . we have to make sure he's okay?

IRIZARRY: I don't want to talk about anything I'm just like nervous and I don't want him asking me none . . . this is a big mess (inaudible) . . . my kids are sleeping.

Irizarry continued to refuse to answer Hagan's question about the name of her child's father. Hagan persisted, culminating with the following exchange:

HAGAN: Ma'am we could either do it here or you're gonna [sic] have to go down there with us and talk to us so it's your choice. This has nothing to do with you and we know that and that's why we're trying to come up here . . . .

IRIZARRY: I know but I'm like in sho [sic] . . . I'm like nervous. . . .

HAGAN: But don't be nervous ma'am my name's Detective Hagan I'm here to help . . . all I need is your child's [sic] father's name that's it . . . .

IRIZARRY: It's Jayson Marquez.

After learning defendant's name, police tracked his vehicle and authorities eventually arrested him, in Tennessee, three weeks later. A

5

Camden County Grand Jury indicted defendant, charging him with the seven counts listed above. Trial commenced in February 2019.[1]

At trial, Shayla testified that she witnessed the shooting and had identified defendant from a photo array. Williams testified that she identified defendant as the shooter at the scene because she witnessed the shooting and had known defendant for seven years. Sheppard did not witness the shooting but testified that defendant and the victim had argued prior to her hearing gunshots. In addition to the eyewitness testimony and positive identifications of defendant, the jury heard testimony from law enforcement officers who responded to, and investigated, the shooting and viewed surveillance footage from the apartment complex. The footage showed the shooting and corroborated multiple eyewitness accounts.

The State also called Irizarry to testify, but on the witness stand her testimony contradicted her previous conversation with Hagan at the scene:

> STATE: Okay. Was the defendant present that night?
>
> IRIZARRY: No.

---

[1] After a jury was sworn on February 5, 2019, but before opening statements began, defense counsel moved for a mistrial without objection from the State because the judge, when reading the indictment to the jury had inadvertently read count seven, certain persons not to carry a weapon, a charge that was to be tried separately. The court granted a mistrial. A second jury was selected, and the trial commenced on February 26, 2019.

A-4176-18

STATE: Did he leave prior to police arrival?

IRIZARRY: No.

STATE: Did he leave in a white car?

IRIZARRY: No.

STATE: Did you speak to police that night?

IRIZARRY: Yes.

STATE: Did you tell him that he was there that night?

IRIZARRY: Yes, but I don't remember.

At an ensuing sidebar, the State asked for a Gross[2] hearing so that it could play the previously recorded interview. Over defendant's objections, the court granted the request and excused the jury. At the Gross hearing, Hagan testified about the substance of the audio recording of his interview with Irizarry from the night of the incident. Based upon his testimony, the trial judge found the recording sufficiently reliable to admit into evidence under N.J.R.E. 803(a)(1) and permitted the jury to hear it.

The jury began deliberating the following day. During deliberations, the jury twice requested a playback of Irizarry's recorded statement made to Hagan. On the second day of deliberations, the foreperson sent a note asking

---

[2] State v. Gross, 216 N.J. Super. 98, 109-10 (App. Div. 1987).

the judge: "[w]hat happens if we can't make a decision?"  The trial court read the jury Model Jury Charges (Criminal), "Judge's Instructions on Further Jury Deliberations" (approved Jan. 2013), along with Model Jury Charges (Criminal), "Judge's Inquiry When Jury Reports Inability to Reach Verdict" (approved June 2013).  The jury continued deliberating, and shortly thereafter, on March 7, 2019, returned guilty verdicts on all counts.

The bifurcated trial on the second-degree unlawful possession of a weapon by certain persons charge, N.J.S.A. 2C:39-7(b)(1), commenced shortly after guilty verdicts were returned for the other six counts.  Before the jury returned to hear opening arguments on that charge, counsel and the trial court discussed the evidence that would be introduced and a stipulation that would be read:

> THE COURT: –[J]ust so we're clear, in the certain person[s] charge I do note that the defendant is entitled to a presumption of innocence and I do recite the elements.  Would that be satisfactory . . . ?
>
> DEFENSE COUNSEL: Yes, Your Honor.

Shortly thereafter, the judge ensured that both attorneys agreed with the way the remainder of the second trial would be conducted.  The jury returned a guilty verdict that same day.

A-4176-18

In advance of sentencing, the State moved for an extended term asserting that defendant, who had two prior felony convictions, qualified as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). On May 6, 2019, the court sentenced defendant to an aggregate custodial term of twenty-six years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and subject to parole supervision for five years upon release, plus fines and penalties. The court found aggravating factors one, two, three, six, and nine strongly outweighed mitigating factors three and five. N.J.S.A. 2C:44-1.

After an extended sidebar to alleviate some confusion over whether the court had just imposed a discretionary extended term, the judge clarified:

> THE COURT: All right. Let me make sure in regard[] to the extended terms. Certainly I did grant that. I felt that [defendant] was exposed to that. I did that on count [one]. The sentence was [eighteen] years NERA, as I stated.

The trial court found "the aggravating factors clearly[,] convincingly and substantially outweigh the mitigating factors." The judge recounted the surveillance footage and the "execution style conduct" of the defendant. This appeal followed.

Absent an abuse of discretion, we accord deference to a trial judge's evidentiary rulings. State v. Nantambu, 221 N.J. 390, 402-03 (2015) (internal

9

quotations omitted). A trial court abuses its discretion only when a "finding [is] so wide [of] the mark that a manifest denial of justice resulted." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (quoting State v. Carter, 91 N.J. 86, 106 (1982)). If the trial court applied the incorrect legal test, only then will an appellate court review an evidentiary ruling de novo. State v. Lykes, 192 N.J. 519, 534 (2007). Last, we review a trial court's sentencing decisions under an abuse of discretion standard. State v. Blackmon, 202 N.J. 283, 297 (2010).

First, defendant argues the trial court improperly admitted Irizarry's recorded statement into substantive evidence. Specifically, defendant asserts that Irizarry did not abandon her prior statement, triggering a Gross hearing, and the court did not conduct the required analysis of all relevant factors. He offers that if the court had, the statement would not have been admitted, and he argues now, its admittance constituted harmful error. Based upon our review of the record, we conclude defendant's argument has no merit.

When a witness's testimony differs from his or her own prior statement, our evidentiary rules permit prior statements to be admitted as substantive evidence. Thus, if the declarant-witness testifies at trial about a prior otherwise admissible statement, which is inconsistent with the declarant-

witness's testimony at the trial, the out-of-court statement may be admissible. N.J.R.E. 803(a)(1). Further, "when the statement is offered by the party calling the declarant-witness, it is admissible only if . . . [it] is contained in a sound recording or in a writing made or signed by the declarant-witness in circumstances establishing its reliability." N.J.R.E. 803(a)(1)(A).

Irizarry provided trial testimony inconsistent with her prior statement to police. At the Gross hearing, Hagan testified that he was advised upon his arrival to the scene that the suspect was Irizarry's children's father. Hagan also recalled that two other individuals were in Irizarry's apartment during his questioning: another police officer and one of defendant's cousins. As she admitted, Irizarry was nervous and hesitant during the interview. Hagan acknowledged that while he did not tell Irizarry that he was recording her, the statement was freely and voluntarily given and corroborated by independent evidence.

The court analyzed the Gross factors and held that the recorded statement evinced sufficient reliability to be admitted as substantive evidence. After the Gross hearing, Irizarry was offered the opportunity to explain or deny the inconsistency between her trial testimony and the recorded statement to Hagan. When she again testified that defendant was not present the evening

11

of the incident, the recorded statement was entered into evidence and played for the jury.

We discern no abuse of the court's discretion by admitting the recorded statement. The court conducted a thorough analysis, analyzing all relevant Gross factors, before concluding that the recording possessed sufficient reliability to permit admission. Assessments of probative value and credibility remained with the jury. Despite criticizing the surreptitious nature of Hagan's recording, defendant cites no authority that casts doubt on the evidentiary legitimacy of it.

Defendant next contends the court erred by failing to conduct a second voir dire concerning his right to testify at the bifurcated trial on the certain persons charge. A criminal defendant's "right to testify is essential to our state-based concept of due process of law, which guarantees a 'fair and impartial trial in which there is a legitimate and decorous recognition of the substantive rights of the defendant.'" State v. Savage, 120 N.J. 594, 628 (1990) (quoting State v. Morriggi, 15 N.J. Super. 479, 481 (App. Div. 1951)). A criminal defendant must knowingly waive this constitutional right. State v. Ball, 381 N.J. Super. 545, 556 (App. Div. 2005).

A-4176-18

Bifurcated trials must be conducted in instances when "proof that defendant was a convicted felon (required in the trial of the [certain persons] charge) clearly tends to prejudice the jury in considering the [additional charge]." State v. Bailey, 231 N.J. 474, 484 (2018). "For efficiency, the same jury may try both charges in succession and may decide the certain persons charge based on the same evidence presented as part of the State's proofs for the unlawful possession charge." Ibid. (citing Ragland, 105 N.J. 189, 195-96 (1986)). However, "waiver of the right to testify in the [first] trial does not constitute a waiver of the right to testify in a later trial on a separate charge." State v. Lopez, 417 N.J. Super. 34, 40 (App. Div. 2010).

When a criminal defendant is represented by counsel, the trial court does not have a duty to advise defendant of his right not to testify or to explain the consequences that his testimony may produce. State v. Bogus, 223 N.J. Super. 409, 426 (App. Div. 1988). Accordingly, a trial court need not engage in a voir dire on the record to establish defendant's knowing waiver when represented by counsel. Ball, 381 N.J. Super. at 556 (citing Bogus, 223 N.J. Super. at 424). Rather, a court's inquiry as to whether defense counsel has so advised their client is merely the better practice. Savage, 120 N.J. at 631.

A-4176-18

Here, when the State concluded its case-in-chief in the first trial, the court instructed defendant regarding his rights to testify. After describing defendant's rights and the testimony options afforded him, the court inquired and defendant, through his attorney, was aware of and knowingly exercised his rights not to testify.

As for the second trial, defendant contends that after the openings, the court immediately began the jury charge, leaving no opportunity for the defense to make an argument or for defendant to testify. However, before commencing the second trial, the judge addressed defense counsel:

> THE COURT: [Counsel], you will or won't give an opening statement, sir, and you don't have to . . . .
>
> DEFENSE COUNSEL: No, I'm going to waive it.
>
> THE COURT: You're going to waive it. Okay, very good. So just so I'm clear procedurally, I told the jury 11:30. I'm going to bring them back in. I'll let the State argue that. If there is a waiver of defense's opening statement . . . I then will go into the certain person[s] not to have any firearms. And then also indicate to them that they will then have the verdict sheet and they will deliberate. Anything else I need to instruct the jury on that charge?
>
> DEFENSE COUNSEL: No, Your Honor.
>
> THE COURT: Anything else I need to instruct the jury after your opening, admission of the exhibit, in the event defendant waives his opening? [T]hen . . . after

14

you read the stipulation[,] I then intend to just read the certain persons not to have any firearms instruction, which includes about the presumption of innocence.

STATE: That's fine, Judge.

THE COURT: And they were all read yesterday – [sixty-two] minutes of instructions, so I think we're satisfactory. Anybody object to that?

DEFENSE COUNSEL: No, Your Honor.

The law does not require that a trial court ensure that a defendant has waived his right to testify by specifically asking him. Bogus, 223 N.J. Super. at 426. A defendant's representation by counsel is sufficient to infer a knowing waiver of ones right to testify. Ball, 381 N.J. Super. at 556. The court explicitly asked defense counsel if he required any additional instructions before starting the second trial. And the court had conducted a voir dire of the defendant during the first trial, just two days prior. Accordingly, the trial court did not err by not conducting another voir dire.

The second trial was conducted on a certain persons offense under N.J.S.A. 2C:39-7(b)(1). Thus, the jury had already found defendant had possession of the weapon in the first trial. Defense counsel stipulated to the evidence presented at the second trial, waived his opening statement, and

15

provided no evidence to refute that defendant was indeed a previously convicted felon.

Next, we reject defendant's assertion that the record is replete with errors which when viewed cumulatively, deprived him of a fair trial. Defendant lists four such errors: admitting the surreptitious recording of Irizarry; an out-of-court identification; and two instances where the trial judge admitted out-of-court eyewitness statements into substantive evidence under the excited utterance exception, N.J.R.E. 803(c)(2). In short, none of the four instances raised by defendant constituted error, individually or cumulatively, that affected the fairness of the trial.

Finally, defendant argues the extended term imposed by the trial court is unjustified. And he further asserts that aggravating factors one and two were misapplied and contributed to an improper sentence. We disagree. Our review of a sentence is deferential, and courts are "bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbarth, 114 N.J. 394, 400-01 (1989); State v. Roth, 95 N.J. 334, 359-60 (1984)). Sentencing discretion must stem from

"findings . . . grounded in competent, reasonably credible evidence" and "appl[ication] [of] correct legal principles."  Roth, 95 N.J. at 363-64 (citing State v. Johnson, 42 N.J. 146, 162 (1964); and In re C.A.H. and B.A.R., 89 N.J. 326 (1982)).

Pursuant to N.J.S.A. 2C:44-3(a), a court may, "upon application of the prosecuting attorney, sentence a person" convicted of a first-, second- or third-degree crime, "to an extended term of imprisonment" if the defendant is a "persistent offender."  A persistent offender is one who:

> [1] [A]t the time of the commission of the crime is [twenty-one] years of age or over, [2] who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least [eighteen] years of age, [3] if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within [ten] years of the date of the crime for which the defendant is being sentenced.
>
> [N.J.S.A. 2C:44-3(a).]

In State v. Pierce, 188 N.J. 155 (2006), our Supreme Court upheld the constitutionality of discretionary extended sentences for persistent offenders. First, when the State moves for an extended term, the court must determine whether defendant is statutorily eligible based upon his prior convictions. Id. at 168.  Then, "whether the court chooses to use the full range of sentences"

17

available depends upon "the court's assessment of the aggravating and mitigating factors, including the consideration of the deterrent need to protect the public." Ibid.

Here, defendant was previously sentenced in February 2013, to three years' confinement for second-degree resisting arrest, N.J.S.A. 2C:29-2(b), and on June 23, 2017, to five years' probation conditioned upon 270 days' imprisonment for third-degree possession with intent to distribute a controlled dangerous substance, N.J.S.A. 2C:35-5(b)(3). Days after the defendant was found guilty here, the State moved for an extended term. The trial judge conducted sentencing on May 6, 2019, and concluded defendant qualified for an extended term due to his prior convictions.

After recounting the facts surrounding the crime, the court found aggravating factor one, the nature and circumstances of the offense and the role this actor played; aggravating factor two, the gravity and seriousness of harm inflicted on the victim; aggravating factor three, the risk this defendant will commit another crime; aggravating factor six, the extent of defendant's prior criminal record and seriousness of the offenses of which he has been convicted; and aggravating factor nine, the need for deterring the defendant and others from violating the law.

The court also found mitigating factor three, that defendant acted under strong provocation, as well as mitigating factor five, the victim's conduct inducing or facilitating the crime.

Here, the court explained each factor was supported in the record by credible evidence. Specifically, the court found that the crime was committed in an especially heinous, cruel or depraved manner because "the defendant's conduct was an attempt to execute this victim." Defendant was also aware of the harm he would inflict on the victim with the "shot [to] the brain, which basically incapacitated [Kenyetta]." The extent of defendant's past convictions also indicates the risk of further criminality. Because the judge supported his reasoning with credible evidence, the discretion he exercised by opting for an extended sentence, and the sentence he ultimately imposed, provides no reason for us to disturb his determination.

Last, defendant's claim that the court "double counted" aggravating factors is similarly meritless. "Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime." State v. Lawless, 214 N.J. 594, 608 (2013). Defendant maintains that aggravating factor six was improperly counted because it considered defendant's prior convictions, the statutory predicate for the

19

extended sentence. However, defendant's prior convictions comprise neither an element, nor explain the degree of the offense.

Accordingly, the court did not abuse its discretion when sentencing defendant to an extended term as a persistent offender. Defendant's other arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-4176-18